**Joel M. LEVY and Judith W. Lynn, Plaintiffs,**

v.

**YOUNG ADULT INSTITUTE, INC., et al., Defendants.**

No. 13–CV–2861 (JPO).

United States District Court, S.D. New York.

Signed April 30, 2015.

Melissa Yang, Michael C. Rakower, Rakower Lupkin PLLC, New York, NY, for Plaintiffs.

Michael Joseph Prame, B. Katherine Kohn, Edward J. Meehan, Nancy F. McTyre, Groom Law Group, Chartered, Washington, DC, Marcus Aaron Asner, Yue–Han Chow, Arnold & Porter, LLP, Ian Ross Shapiro, Cooley LLP, New York, NY, for Defendants.

### OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

J. PAUL OETKEN, District Judge:

Plaintiffs Joel M. Levy and Judith W. Lynn (together, "Plaintiffs") have asserted claims pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and state law against the Young Adult Institute, Inc. ("YAI"), of which Levy is a former executive, and against other defendants (collectively, "Defendants"). YAI has answered the operative complaint and filed counterclaims against Levy for breach of fiduciary duty and for acting as a faithless servant. Now before the Court is the report and recommendation ("Report") of the Honorable Sarah Netburn, U.S. Magistrate Judge, on Levy's motion to dismiss YAI's counterclaims, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Report recommends that the motion be denied. For the reasons that follow, the Report is adopted, Plaintiffs' objections are overruled, and Levy's motion is denied.

### I. Background [1]

Plaintiffs filed their third amended complaint on June 19, 2014. (Dkt. No. 104.) On June 30, 2014, Defendants answered the complaint, and YAI asserted counter-

---

1. YAI's allegations in support of its counterclaims are set out in the Report, familiarity with which is assumed. (See Dkt. No. 179

claims against Levy. (Dkt. No. 105 ("Counterclaims").) Levy moved to dismiss the counterclaims.[2] (Dkt. No. 168.) YAI opposed the motion (Dkt. No. 126), and Levy replied (Dkt. No. 171). Judge Netburn filed the Report on January 14, 2015. (Dkt. No. 179 ("Report").) Levy filed an objection to the Report on February 2, 2015 (Dkt. No. 188 ("Objection")), and YAI opposed Levy's objection on February 19, 2015 (Dkt. No. 196 ("Opposition")). The Court denied YAI's request that discovery on its counterclaims be stayed pending the Court's consideration of Levy's objection. (Dkt. Nos. 190, 192.)

## II. Standard of Review

■ Pursuant to 28 U.S.C. § 636(b)(1), a district court reviewing a magistrate judge's report and recommendation may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." The district court reviews a magistrate judge's report "strictly for clear error when no objection has been made," but "will make a *de novo* determination regarding those parts of the Report to which objections have been made." *Coach, Inc. v. O'Brien*, No. 10 Civ. 6071(JPO)(JLC), 2012 WL 1255276, at *1 (S.D.N.Y. Apr. 13, 2012) (citing *McDonaugh v. Astrue*, 672 F.Supp.2d 542, 547 (S.D.N.Y.2009)). "In *DeJesus v. Comm'r of Soc. Sec.*, No. 13 Civ. 2251(AJN)(HBP), 2014 WL 5040874, at *1 (S.D.N.Y. Sept. 29, 2014)."

## III. Discussion

### A. Business Judgment Rule

■ Under New York law, the business judgment rule "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Auerbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1000 (1979); *see also Treadway Cos. v. Care Corp.*, 638 F.2d 357, 382 (2d Cir.1980) ("Under the business judgment rule, directors are presumed to have acted properly and in good faith . . . ."). The rule's principles are reflected in a section of the statutory law governing corporations, New York Business Corporation Law § 717. *See Lindner Fund, Inc. v. Waldbaum, Inc.*, 82 N.Y.2d 219, 604 N.Y.S.2d 32, 624 N.E.2d 160, 161 (1993) (recognizing that New York's business judgment rule provides that corporate officers must "perform their duties 'in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances'" (quoting N.Y. Bus. Corp. Law § 717(a))). An analogous statute, New York Not–for–Profit Corporation Law § 717, governs the directors and officers of nonprofit corporations. *See* N.Y. Not–for–Profit Corp. Law [hereinafter "N–PCL"] § 717(a) (providing that "[d]irectors and officers shall discharge the duties of their respective positions in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances"); *see also S.H. & Helen R. Scheuer Family Found., Inc. v. 61 Assocs.*, 179 A.D.2d 65, 582 N.Y.S.2d 662, 665 (1st Dep't 1992) ("[I]t is well established that, as fiduciaries, board members [of a not-for-profit corporation] bear a duty of loyalty to the corporation and may not profit improperly at the expense of their corporation." (internal quotation marks omitted)).

■ "It is black-letter, settled law that when a corporate director or officer has an

---

("Report") at 1–8.) The background of the case is referenced only as necessary to explain the Court's decision on Levy's motion to dismiss.

2. The docketing of Levy's motion to dismiss was delayed to allow the parties to redact portions of certain documents relating to the motion.

interest in a decision, the business judgment rule does not apply." *In re Croton River Club, Inc.*, 52 F.3d 41, 44 (2d Cir. 1995) (citing, *inter alia, Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 483 N.Y.S.2d 667, 473 N.E.2d 19, 26 (1984)); *see also Treadway*, 638 F.2d at 382 (stating that directors "are called to account for their actions only when they are shown to have engaged in self-dealing or fraud, or to have acted in bad faith"). As the Report states, it is improper to dismiss a suit at the motion to dismiss stage on the basis of the business judgment rule if the plaintiff's pleadings allege that directors or officers did not act in good faith. (*See* Report at 24 (citing, *inter alia, Ackerman v. 305 E. 40th Owners Corp.*, 189 A.D.2d 665, 592 N.Y.S.2d 365, 367 (1st Dep't 1993)).)

The Report concludes that YAI's counterclaims should proceed because they allege that "Levy was a faithless servant and breached his fiduciary duties, resulting in harm to YAI through the loss of money unfairly paid to Levy and through the investigation, endangerment of services[,] and settlement paid by YAI." (Report at 25.) Levy objects, arguing that the business judgment rule and N–PCL § 717 shield him from the counterclaims because the decisions concerning his compensation were made not by him, but by YAI's Board of Trustees (the "Board"), whose members were not interested in those decisions. (Objection at 8–10.) Levy's argument is without merit.

YAI's counterclaims challenge *Levy's* actions, not those of the Board. Levy is alleged to have knowingly certified inaccurate financial documents and otherwise placed the corporation's legal and financial status in jeopardy through his actions. Moreover, while it is true that the counterclaims place the propriety of Levy's compensation in question, YAI does not contend that the source of the impropriety is that the members of the Board had a financial stake in the compensation decisions. Rather, YAI alleges, Levy "skew[ed] the information provided to the Board, causing the Board to grant him excessive and unreasonable compensation based on false information." (Counterclaims ¶ 23.) Levy allegedly did this through a "multi-faceted scheme," including drafting "in substantial part" YAI's 1999 Compensation Philosophy and directing the Board to "retain specific compensation consultants which he believed he could convince to bless his excessive compensation levels." (*Id.* ¶¶ 25–26, 29.) Furthermore, and most significantly, Levy "repeatedly made false representations to the Board and its committees . . . concerning YAI's financial performance," which was "a significant factor in the Board's compensation decisions." (*Id.* ¶ 30.) [3]

---

[3.] As further described below, at the core of YAI's claims that Levy acted as a faithless servant and breached his fiduciary duties are allegations of accounting improprieties that Levy engineered and then hid from the Board. Levy's alleged accounting improprieties included misstating YAI's costs and falsely certifying YAI's Consolidated Fiscal Reports ("CFRs")—financial statements that YAI submitted to New York regulators—which permitted YAI to receive inflated Medicaid reimbursements. (Counterclaims ¶¶ 66, 71–75.) YAI claims "[o]n information and belief" that "Levy knew that YAI's CFRs contained misstatements and reallocations designed to increase appeal awards and reimbursement rates." (*Id.* ¶ 77.) Further, YAI asserts, Levy's reports to the Board overstated YAI's financial performance by including these inflated figures. (*Id.* ¶ 79.) Levy "failed to inform the Board that millions of dollars of YAI's income resulted from improper accounting practices," and "[a]t no time was the Board ever told that there were misstatements in the CFRs or inappropriate reallocations of costs." (*Id.* ¶¶ 83, 85.) Significantly, the "growth and financial performance" of YAI "was a significant factor in the Board's compensation decisions." (*Id.* ¶ 87.)

Levy argues that YAI's claims are foreclosed by the business judgment rule, which generally requires the dismissal of claims "premised upon ... decisions made by officers and directors," unless it is alleged that those officers and directors lacked independence or good faith. (Objection at 8.) Accepting the allegations of the counterclaims as true, however, the Court must assume that the Board relied on *Levy's* financial misconduct in their decisions on his compensation. The basis for YAI's claims is not an assertion that the Board's decisions were "unwise or inexpedient," as Levy argues (Objection at 11)—a theory which would properly be barred by the business judgment rule. Instead, YAI asserts that Levy's misstatements of YAI's financial performance—on which the Board is alleged to have relied—may have led Levy to be compensated more substantially than he otherwise would have been. (*See* Counterclaims ¶ 87.) For this reason, the fact that a disinterested Board voted on the compensation decisions cannot insulate Levy from YAI's claims. *Cf.* N.Y. Bus. Corp. Law § 713(a)(1) (permitting transactions involving interested directors upon approval by a disinterested board, but only where the material facts regarding the interest at stake are disclosed to the board). Accordingly, Levy's objection on this basis is overruled.

**B. Rule 9(b)**

■ The Report concludes that YAI's counterclaims do not sound in fraud, and therefore, that they need not meet the heightened pleading standard set out in Rule 9(b) of the Federal Rules of Civil Procedure. (Report at 12–22.) Levy objects, arguing that YAI's counterclaims do sound in fraud because they assert that

Levy "induced the Board to award him compensation based on false statements." (Objection at 14.) The Court does not need to reach this potentially thorny question, because even assuming that Rule 9(b) applies, the counterclaims satisfy its requirements.

■ Rule 9(b) requires that allegations of fraud or mistake "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "A complaint making such allegations must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir.2000) (internal quotation marks and brackets omitted). The parties divide Levy's alleged scheme into four "stages." The stages that may sound in fraud are Levy's knowing certification of falsified CFRs and his subsequent misstatements to the Board about YAI's financial condition.[4] Even if YAI's counterclaims must be pleaded with particularity, the counterclaims contain sufficient detail as to the circumstances of the alleged fraud to permit these claims to proceed under Rule 9(b).

**1. CFRs**

YAI alleges that Levy repeatedly certified that the CFRs from fiscal years 1999–2000 through 2007–2008 were correct even though he knew they contained misstatements. (Counterclaims ¶¶ 73, 77.) The statements within the CFRs from this time period claimed to be fraudulent are particularized in the False Claims Act ("FCA")

---

**4.** The other two stages involve YAI's allegations that Levy drafted a "substantial part" of YAI's 1999 Compensation Philosophy and "exerted considerable influence" in choosing compensation consultants. (*See* Report at

18–19.) The Court concludes that these two stages clearly do not sound in fraud, as they do not involve allegations of false or misleading statements. *See Rombach v. Chang,* 355 F.3d 164, 172–73 (2d Cir.2004).

complaint filed in a related case, which is incorporated by reference in YAI's counterclaims.[5] (Counterclaims ¶ 72; *see* Complaint–in–Intervention of the United States of America ¶¶ 21–56, *United States ex rel. Faden v. Young Adult Institute, Inc.*, No. 09 Civ. 5003(RMB), Dkt. No. 21 [hereinafter "FCA Complaint"].) The FCA Complaint states that the CFRs "falsely allocated certain employees' personal-services expenses on Schedule CFR–4," which "increase[d] the potential [Medicaid] appeals that could be submitted for the facilities affected." (FCA Complaint ¶¶ 26–27; 29–30.) The CFRs also "falsely categoriz[ed] certain of the personal-services expenses for its employees . . . as 'clinical care' rather than 'program administration,' which artificially increased YAI's eligibility for appeals funds," based on certain "position title codes" set out in Appendix R to the manual for completing the CFRs. (*Id.* ¶¶ 33–34; *see also id.* at 35–46.) Finally, the CFRs "claimed excessive Medicaid compensation by falsely categorizing the personal-services expenses of its fund-raising staff . . . as 'agency administration' rather than in the separate column designated for non-reimbursable expenses, which artificially increased YAI's eligibility for appeals funds." (*Id.* ¶ 47.) The fund-raising expenses were included in the "agency administration" section of Schedule CFR–3, rather than in the "Other Programs" section of Schedule CFR–2, column 7, even though the CFR manual clearly prohibited this. (*Id.* ¶¶ 48, 50.)

The counterclaims allege that Levy certified the relevant CFRs although he "knew that [they] contained misstatements and re-allocations designed to increase appeal awards and reimbursement rates," and that he also confirmed that the CFRs were supported by documentation, even though this was "blatantly false" and Levy knew such records did not exist. (Counterclaims ¶¶ 73–78.) These details suffice to put Levy on notice as to the circumstances constituting fraud, including the statements at issue, the party who issued them, when and where they were made, and why they are fraudulent. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.2006).

### 2. Statements to the Board

YAI alleges that Levy "made reports on YAI's financial performance and growth to the Board," which reports were "based in part on the misstatements in the CFR[s]." (Counterclaims ¶ 79.) Levy knew that the misrepresentations in the CFRs allowed YAI to receive inflated Medicaid payments, and accordingly, Levy also knew that the financial figures he provided to the Board were overstated. YAI alleges that Levy made such a misstatement of YAI's financial performance at a meeting of the Executive Compensation Committee of the Board on November 24, 2008. (*Id.* ¶¶ 80–81.) But Levy "failed to inform the Board that millions of dollars of YAI's income resulted from improper accounting practices." (*Id.* ¶ 85.) Further, at a December 2002 meeting, Levy "explained and answered questions on the rate appeal process" for the Board without revealing that "there were misstatements in the CFRs or

---

5. *See United States v. Bank of N.Y. Mellon*, 941 F.Supp.2d 438, 450 (S.D.N.Y.2013) (stating that a district court considering a Rule 12(b)(6) motion "may rely upon documents attached to the complaint as exhibits and documents incorporated by reference in the complaint" (citing *Halebian v. Berv*, 644 F.3d 122, 131 n. 7 (2d Cir.2011)) (internal quotation marks omitted)); *see also Gorbaty v. Wells Fargo Bank, N.A.*, Nos. 10 Civ. 3291(NGG)(SMG), 10 Civ. 3354(NGG)(SMG), 2012 WL 1372260, at *22 (E.D.N.Y. Apr. 18, 2012) (concluding that "although the section of [the complaint] devoted specifically to fraud is somewhat sparse, the factual allegations incorporated by reference into that section" sufficed to satisfy Rule 9(b)).

inappropriate re-allocation of costs to inflate artificially the amount YAI could recover in rate appeals." (*Id.* ¶¶ 82–83.)

As above, the allegations in the counterclaims sufficiently set out the circumstances constituting fraud, including the speaker, when and where they were made, and why the statements are alleged to be fraudulent. *See Lerner,* 459 F.3d at 290. Accordingly, Levy's objection based on Rule 9(b) is overruled, and the motion to dismiss on this ground is denied.

### C. Statute of Limitations

Levy asserts that the breach of fiduciary duty claim is barred by the New York statute of limitations. (Objection at 18–21.) The Report notes that Levy only raised the issue "[i]n a footnote in his reply brief" (Report at 11; *see* Dkt. No. 171, at 3 n. 2), and Judge Netburn ultimately declined to rule on the issue on the grounds that (1) arguments generally may not be made for the first time in reply briefs; (2) arguments that are "drastically underdeveloped" may be considered not to have properly raised an issue; and (3) the discovery on the fiduciary duty claim would duplicate the faithless servant discovery, and accordingly dismissal would not inure to the benefit of judicial economy (Report at 11–12).

#### 1. Argument Not Properly Presented to the Magistrate Judge

The question "[w]hether a party may raise a new legal argument ... for the first time in objections to [a magistrate judge's report and recommendation] has not yet been decided in this Circuit." *Amadasu v. Ngati,* No. 05 Civ. 2585(RRM)(LB), 2012 WL 3930386, at *5 (E.D.N.Y. Sept. 9, 2012). Some courts in this circuit have stated, as a general matter, that "a party waives any arguments not presented to the magistrate judge." *Watson v. Geithner,* No. 11 Civ. 9527(AJN), 2013 WL 5441748, at *2

(S.D.N.Y. Sept. 27, 2013) (emphasis omitted). Others have applied a multi-factor test to determine whether a district court should exercise discretion to review arguments properly raised for the first time in objections to a magistrate judge's ruling. *See, e.g., Machicote v. Ercole,* No. 06 Civ. 13320(DAB)(JCF), 2011 WL 3809920, at *6 & n. 5 (S.D.N.Y. Aug. 25, 2011) (citing *Wells Fargo Bank N.A. v. Sinnott,* No. 07 Civ. 169(CR), 2010 WL 297830, at *2 (D.Vt.2010)).

■ The Second Circuit has expressed skepticism regarding the proposition that district courts lack discretion to consider an issue first raised in a reply brief. *See Booking v. Gen. Star Mgmt. Co.,* 254 F.3d 414, 418 (2d Cir.2001). For reasons parallel to those set out in *Booking,* the Court concludes that it is at least within the discretion of the district court to consider arguments not presented (or not properly presented) to the magistrate judge in connection with a report and recommendation. This determination has particular force in cases like this one, where both parties have had an opportunity at the objection stage to fully brief the issue. Accordingly, the Court will apply the test used by some courts in this circuit to determine whether to consider Levy's statute of limitations argument.

■ The test analyzes the following six factors:

(1) the reason for the litigant's previous failure to raise the new legal argument; (2) whether an intervening case or statute has changed the state of the law; (3) whether the new issue is a pure issue of law for which no additional fact-finding is required; (4) whether the resolution of the new legal issue is not open to serious question; (5) whether efficiency and fairness militate in favor or against consideration of the new argument; and

(6) whether manifest injustice will result if the new argument is not considered. *Amadasu*, 2012 WL 3930386, at *5 (citing *Wells Fargo*, 2010 WL 297830, at *4). First, Levy maintains that he did not raise the argument earlier because he did not anticipate that YAI would contest the applicability of Rule 9(b), and would instead contest only whether the claims met the Rule 9(b) standard. (Objection at 19–20.) The record on this point is not particularly supportive of Levy's interpretation, given that his briefing separately addressed the issue of the applicability of Rule 9(b) rather than focusing only on whether the rule's requirements were satisfied. (*See* Dkt. No. 169, at 10–12.) Second, there has been no intervening change in the law. Third, the new issue Levy raises is purely a question of law for which no additional factfinding is required. Fourth, as set forth below, the resolution of the legal issue is not open to serious question. Fifth, efficiency and fairness militate in favor of considering the argument here. While it would have been preferable for Levy to have properly raised the statute of limitations issue before Judge Netburn so that this Court would have the benefit of her recommendation, the parties have now fully briefed the issue. And sixth, there appears to be little risk of manifest injustice even if the Court does not consider the issue here, as a statute of limitations defense could presumably be raised in Levy's answer to the counterclaims. *See Kulzer v. Pittsburgh–Corning Corp.*, 942 F.2d 122, 125 (2d Cir.1991) ("[T]he statute of limitations defense need not be raised in a pre-answer motion. Rather, under Fed. R.Civ.P. 8(c), the statute of limitations constitutes an affirmative defense, to be asserted in a responsive pleading." (internal quotation marks omitted)).

Upon analysis of these divergent factors, the Court concludes that it will exercise its discretion to consider Levy's statute of limitations challenge on the merits. This determination rests principally on the fact that the resolution of the issue at this stage will be most efficient. Levy's argument rests on a pure question of law whose resolution is not open to serious question, and no further factual development or briefing is necessary for the analysis of the applicable statute of limitations.

### 2. Merits

Levy contends that the breach of fiduciary duty claim is time barred because it is subject to a three-year statute of limitations. (Objection at 19.) YAI replies that the claim is instead governed by a six-year statute of limitations. (Opposition at 12–13.) It is undisputed that the claim is not barred if the six-year period applies: the parties both assert that the statute of limitations began to run (at the earliest) at some point in 2009, and YAI's claim was filed in May 2014. (*See* Objection at 19; Opposition at 13.)

Levy's statute of limitations challenge depends on a quirk of New York law, which calls for either a three-year or a six-year limitations period for a breach of fiduciary duty claim depending on certain characteristics of the claim. The rule that governs for the standard claim of breach of fiduciary duty is that "the applicable limitations period depends on the substantive remedy that the plaintiff seeks." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 879 N.Y.S.2d 355, 907 N.E.2d 268, 272 (2009). If the remedy sought is "purely monetary," a three-year limitations period applies, but if the complaint seeks equitable relief, a six-year limitations period applies. *Id.* (citing N.Y. C.P.L.R. 213(1), 214(4)).

 Two more specific rules supplant the general rule in particular circumstances, however. First, under New York Civil Practice Law and Rules ("CPLR") 213(7), an action by a corporation against one of its directors (or former directors)

for breach of fiduciary duty is subject to a six-year limitations period. *See In re 1st Rochdale Coop. Grp., Ltd.,* No. 07 Civ. 7852(DC), 2008 WL 170410, at *3 (S.D.N.Y. Jan. 17, 2008) ("[A] six-year statute of limitations applies to claims on behalf of a corporation against its officers and directors for breach of fiduciary duty."); *accord In re Gen. Vision Servs., Inc.,* 423 B.R. 790, 793 (S.D.N.Y.2010) ("[C]laims seeking damages for breach of fiduciary duty may be subject to the six-year limitations period, under CPLR 213(7), where they are asserted in an action by or on behalf of a corporation against a present or former director, officer or stockholder to recover damages ... for an injury to property."). Second, claims of "breach of fiduciary duty based on fraud are generally subject to six-year statutes of limitations." *Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353, 361 & n. 3 (2d Cir.2013) (citing N.Y. C.P.L.R. 213(8)).

■ The Court concludes that the six-year period set out in CPLR 213(7) clearly applies to YAI's breach of fiduciary duty claim. In the category of suits by corporations against directors, CPLR 213(7) "applies to all actions, with no differentiation between legal and equitable claims." *Roslyn Union Free Sch. Dist. v. Barkan,* 16 N.Y.3d 643, 926 N.Y.S.2d 349, 950 N.E.2d 85, 89 (2011) (internal quotation marks and alteration omitted) (concluding that a corporation's claim against a former director for breach of fiduciary duty was governed by a six-year statute of limitations). Furthermore, where CPLR 213(7)'s "specific language ... encompasses a particular claim, it supplants the general three-year rule" that applies to other actions for injury to property. *Id.,* 926 N.Y.S.2d 349, 950 N.E.2d at 88; *accord Whitney Holdings, Ltd. v. Givotovsky,* 988 F.Supp. 732, 741–42 (S.D.N.Y.1997) ("Section 213(7) sup-

plants all other statutes of limitation potentially applicable to a suit on a corporation's claim against its director, officer or shareholder.").

Here, YAI—a not-for-profit corporation—brings this suit for an injury caused by an alleged breach of fiduciary duty by Levy, the corporation's former Chief Executive Officer. Accordingly, this cause of action falls squarely under the six-year period provided under CPLR 213(7) for the claims of corporations against their former directors or officers. The breach of fiduciary duty claim is therefore timely, and the motion to dismiss on this ground is denied.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' objections to the Report are OVERRULED following the Court's de novo review. The Court has also reviewed the portion of the Report to which Plaintiffs did not specifically object and concludes that it is not clearly erroneous.[6] Accordingly, Magistrate Judge Netburn's Report and Recommendation is ADOPTED, and Levy's motion to dismiss YAI's counterclaims is DENIED.

The Clerk of the Court is directed to close the motion at docket number 168.

SO ORDERED.

## REPORT AND RECOMMENDATION

SARAH NETBURN, United States Magistrate Judge:

On June 19, 2014, Plaintiffs Joel M. Levy and his spouse Judith W. Lynn filed their Third Amended Complaint against, among others, Levy's former employer the Young Adult Institute, Inc. ("YAI"), alleging claims under the Employee Retirement

6. Levy did not object to the Report's proper conclusion that the Court has diversity jurisdiction over YAI's counterclaims. (Report at 25.)

Income Security Act of 1974 ("ERISA"). On June 30, 2014, YAI answered the complaint and asserted faithless servant and breach of fiduciary duty counterclaims against Levy. Levy has moved to dismiss these claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for lack of jurisdiction under Rule 12(b)(1).

For the following reasons, I recommend that Levy's motion to dismiss be DENIED.

## BACKGROUND

### I. Factual Background

YAI's counterclaims allege generally that, through influence and manipulation of YAI's compensation process and mismanagement of YAI's finances, Levy breached his duty of loyalty and his fiduciary duty to his employer, resulting in excessive compensation for Levy and government enforcement actions and heightened regulatory oversight against YAI. YAI seeks an award in the amount of compensation paid to (or for the benefit of) Levy for the period of his faithless service, including any deferred compensation, a declaration that Levy and his beneficiaries are not entitled to any remaining unpaid deferred compensation, and an award of other compensatory damages, attorneys' fees, costs and punitive damages.

YAI is a non-profit organization that provides services to people with developmental disabilities. (Counterclaim ("CC") ¶¶ 5, 9.) YAI receives most of its funding from government programs, including Medicaid programs run through the New York State Office for Persons with Developmental Disabilities ("OPWDD"). (CC ¶ 13.) Medicaid reimbursement makes up a majority of YAI's annual revenue. (CC ¶¶ 14, 66.) YAI incurs costs for its facilities' services throughout the year and is paid by OPWDD based on previously established reimbursement rates. (CC ¶ 66.)

To be eligible for reimbursement, YAI must submit to OPWDD its actual costs in an annual Consolidated Fiscal Report ("CFR"). (*Id.*) YAI can submit a rate appeal for additional funding for costs that exceed the reimbursement amounts. (CC ¶ 67.)

As a non-profit organization designated pursuant to § 501(c)(3) of the Internal Revenue Code, YAI is subject to oversight and regulation by the Charities Bureau of the Office of the New York State Attorney General ("OAG"). (CC ¶ 11.) The payment of executive compensation is subject to a reasonableness standard, and excessive compensation to senior executives is prohibited under the Internal Revenue Code and New York law. (CC ¶¶ 15, 16.) YAI is exposed to potential liability, the risk of loss of its tax-exempt status, and the possible loss of its ability to provide Medicaid-funded services in New York State if it pays its executives more than reasonable compensation. (CC ¶¶ 15–21, 61–64.)

Levy worked for YAI for nearly 40 years, including serving as Executive Director and then Chief Executive Officer ("CEO") from 1979 to June 30, 2009. (CC ¶ 24.) YAI continued to compensate Levy as a consultant from his retirement on July 1, 2009, until June 30, 2011. (*Id.*) "As CEO, Levy was responsible for all aspects of YAI's operations, including, but not limited to, budgeting, financial management, cost reporting, program operations, and corporate compliance." (CC ¶ 69.)

Decisions regarding CEO compensation are made by YAI's Board, following an annual performance evaluation conducted by the Executive Compensation Committee. (CC ¶ 22.) It is undisputed that Levy did not serve on the Board. YAI alleges that "[f]rom at least as early as in or about 1999 through in or about 2009, Levy, through his position at YAI, was

able to exert considerable control over the information and advice provided to the Executive Compensation Committee." (CC ¶ 23.) The Executive Compensation Committee is guided, in part, by YAI's 1999 Compensation Philosophy, which "Levy drafted in substantial part." (CC ¶ 26.) That document provided that " 'compensation levels must exceed the 90th percentile of organizations which could vie for the same management sought by the agency— particularly in the health care sector and for-profit enterprises.' " (*Id.*) Thus, identifying which organizations were comparable to YAI set the benchmark for Levy's compensation levels. YAI alleges that "Levy directed the Board to retain specific compensation consultants which he believed he could convince to bless his excessive compensation levels, and pressed the compensation consultants to include in their market analyses certain organizations which he knew paid executives at high levels, even though those organizations were not comparable to YAI." (CC ¶ 29.) It is further alleged that the consultants' compensation studies were "fundamentally lacking" because they failed to provide data concerning deferred compensation benefits—although there is no allegation that Levy drafted these studies or directed the consultants to omit such information. (CC ¶ 28.)

In addition to comparisons to other executive compensation packages, YAI's fiscal health was also a "significant factor" in setting the CEO's salary. (CC ¶ 30.) YAI alleges that Levy "repeatedly made false representations to the Board and its committees, as well as YAI regulators, concerning YAI's financial performance." (*Id.*) Levy's inflated reports of the financial performance of YAI were used to justify his excessive compensation package. (*Id.*) The majority of these misrepresentations are based on inaccurate CFRs, which are discussed further below. But YAI alleges, by way of example, that "at the November 24, 2008 Executive Compensation Committee meeting, Levy made a presentation on YAI's financial performance and highlighted that the YAI network's income exceeded $250 million for the first time in history." (CC ¶ 80.) YAI does not allege specifically that this presentation was false, but alleges generally that "Levy failed to inform the Board that millions of dollars of YAI's income resulted from improper accounting practices." (CC ¶ 85.) "Levy also presented the status of YAI's rate appeals and price adjustments to the Board and its relevant committees." (CC ¶ 81.) But it is alleged that he failed to inform the Board that YAI lacked documentation to support its submissions for funding for costs in excess of its reimbursements. (CC ¶ 86.)

It is alleged that as a result of these self-interested acts, Levy was awarded a compensation package that was excessive. His compensation included a base salary; annual bonus; annual car allowance (for a Lexus); reimbursement for expenses, including business-class international travel and legal fees for contract negotiations; health and dental insurance; life insurance; long-term disability insurance; and deferred compensation. (CC ¶ 32.) Levy's annual rate of salary for June 1, 2007 to May 31, 2008 was $550,000, and his annual incentive bonus was set at $200,000, in addition to a $50,000 bonus from the New York League, a member of the YAI network. (CC ¶ 33.) The following year his annual base was increased to $680,000, and his target bonus was set at $120,000, plus the $50,000 New York League bonus. (*Id.*)

In addition, YAI established a Supplemental Pension Plan and Trust for Certain Management Employees of Young Adult Institute (the "SERP"). (CC ¶ 34.) The SERP provided its participants (senior management) with an annuity benefit

based on a formula that relied on the employee's highest annual earnings. (CC ¶ 36.) YAI began making payments to Levy in connection with the SERP in or about January 2010. (CC ¶ 43.) By August 2011, YAI had paid over $1.75 million to Levy (or for his benefit) in connection with the SERP. (CC ¶ 44.)

YAI focuses its allegations related to improper accounting on the False Claims Act investigations by the OAG and the U.S. Attorney's Office for the Southern District of New York ("USAO"), which were triggered by a *qui tam* complaint filed by YAI's former budget director on May 28, 2009. The OAG and USAO filed separate complaints in intervention against YAI and Levy, among others. (CC ¶ 51.) On January 18, 2011, YAI entered into a settlement agreement that required YAI to pay the state and federal government $18 million. (CC ¶ 52.) YAI also entered into a Corporate Integrity Agreement ("CIA") with the New York State Office of the Medicaid Inspector General ("OMIG"). (CC ¶ 51.) The CIA required that YAI submit an annual report on its compliance program to the OMIG and to retain an Independent Review Organization ("IRO") that also must report annually to the OMIG on YAI's accounting practices, financial costs, and submissions for reimbursement. (CC ¶ 53.) YAI had to submit its financial reports for Medicaid funding and reimbursements for fiscal year 2008–2009 and onward to the IRO for review. (*Id.*) In its first annual report, the IRO concluded that YAI had not been in compliance with respect to certain New York State cost allocation requirements. (*Id.*)

The False Claims Act claims focused on YAI's CFRs. As CEO, Levy was "tasked with certifying the completeness and accuracy of YAI's annual CFRs before submitting them to OPWDD." (CC ¶ 70). Each CFR must be certified by the CEO of the provider, who must attest that the "report has been completed in its entirety, and is in accordance with the instructions and is true and correct to the best of my knowledge. I further attest to the fact that there are records and allocation worksheets to support all the information contained herein, in the custody of the [provider]." (CC ¶ 68.)

YAI alleges, generally, that "Levy falsely certified CFRs that misstated YAI's costs. This served to increase YAI's rate appeal awards beyond what it was eligible to receive, as evidenced by the reviews of the CFRs by the IRO." (CC ¶ 71.) Relying on the complaint in intervention filed by the USAO, YAI alleges that the certified CFRs "artificially inflated the amount of its Medicaid funding, through manipulating expenses by: (1) improperly shifting personal-services expenses for certain employees to residential facilities where they did not work to create fictitious losses at such facilities; (2) misclassifying administrative personnel or other employees lacking requisite licenses or certifications as 'clinical care' rather than 'program administration'; and (3) falsely categorizing personal-services expenses for its fundraising staff as 'agency administration.'" (CC ¶ 72.) YAI alleges that "[b]ecause the costs reported in the CFRs were incorrect, Levy's repeated certifications that documentation supported the information contained in the CFRs were blatantly false." (CC ¶ 74 (internal citation omitted).)

YAI alleges, "[o]n information and belief," that "Levy knew that YAI's CFRs contained misstatements and re-allocations designed to increase appeal awards and reimbursement rates." (CC ¶ 77.) He also "was aware" that records and worksheets to support the CFRs did not exist despite his certification and representation to the Board to the contrary. (CC ¶ 78.) Moreover, Levy never told the Board "that

there were misstatements in the CFRs or inappropriate reallocations of costs to inflate artificially the amount YAI could recover in rate appeals." (CC ¶ 83.) Levy failed to advise the Board of these improper accounting practices, and misrepresented the financial health of the organization. Notwithstanding these failures, YAI awarded Levy with a handsome compensation package. (CC ¶ 99.)

Finally, on August 2, 2011, the New York Times ran a front-page article that focused on, among other things, the False Claims Act investigation of YAI's Medicaid reimbursements and Levy's excessive compensation.[1] (CC ¶ 56.) The article reported that Levy earned more than $1 million in compensation in 2009, and noted that similar-sized non-profit organizations in New York paid an average salary to chief executives of $493,000. (*Id.*)

On the heels of that article, OPWDD placed YAI on "Early Alert" status. (CC ¶ 57.) The purpose of Early Alert is for OPWDD to monitor an organization to determine whether it has the ability to remedy its deficient practices and sustain compliance. (*Id.*) While on Early Alert, YAI was prohibited from expanding its services and was subject to enhanced monitoring by OPWDD. (CC ¶¶ 58–59.) Early Alert status also placed YAI at risk of fines, transfer or termination of services, or cancellation of government funding. (CC ¶ 61.) OPWDD sought assurances from YAI as to how it would fulfill its obligations in paying the $18 million settlement to the state and federal governments while maintaining fiscal viability and programmatic quality. (CC ¶ 63.) OPWDD specifically referenced the recent disclosures regarding Levy's compensation as part of its concern about YAI's fiscal management. (CC ¶ 64.)

In the face of this heightened scrutiny following the False Claims Act suit, the intervention from the state and federal government, the Early Alert status from OPWDD and the negative press focus on the organization, the YAI Board hired a new executive compensation consultant to review all elements of Levy's compensation. (CC ¶ 47.) In 2013, the compensation consultant issued a report that concluded that Levy's post-retirement compensation package—approximately $16.9 million in accrued benefits—was excessive by approximately $10.4 million. (CC ¶ 48.)

## II. Procedural History

On July 11, 2014, Levy served a motion to dismiss the counterclaims filed by YAI. On July 23, 2014, by stipulation of the parties, it was agreed that YAI would serve its opposition to the motion on September 3, 2014, and Levy would serve his reply on September 24, 2014, and both parties met their respective deadlines. The Court held oral argument on the motion on October 29, 2014. On December 11, 2014, the Court issued an order permitting certain documents in the parties' motion to be filed under seal and directed that the motion papers be filed.

## DISCUSSION

### I. Standard of Review

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must take "factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir.2009) (citation omitted). The Court's function on a motion to dismiss is "not to weigh the evidence that

---

**1.** *See* Russ Buettner, *Reaping Millions in Nonprofit Care for Disabled*, N.Y. Times (Aug. 2, 2011), http://www.nytimes.com/2011/08/02/ nyregion/for-executives-at-group-homes-generous-pay-and-little-oversight.html.

might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[2] *Id.*

In its analysis, the Court may consider documents that are referenced in the complaint (or, in this case, the counterclaim), documents that the (counter)plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. *See Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002); *BLT Rest. Grp. LLC v. Tourondel,* 855 F.Supp.2d 4, 15 (S.D.N.Y.2012).

## II. YAI's Counterclaims

### A. Faithless Servant Doctrine

YAI claims that Levy has acted as a faithless servant within the meaning of that doctrine under state law, including violating his duties of loyalty and good faith. (*See generally* CC ¶¶ 92103.) YAI alleges that through Levy's "false statements and self-interested actions, Levy breached his duty of loyalty and deprived YAI of his good judgment and services." (CC ¶ 101.) YAI is incorporated in New York, and therefore this claim falls under New York law. *Walton v. Morgan Stanley & Co. Inc.,* 623 F.2d 796, 798 n. 3 (2d Cir.1980) ("New York law dictates that the law of the state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation."); *In re Grumman Olson Indus., Inc.,* 329 B.R. 411, 427 (Bankr.S.D.N.Y.2005) (citing *Walton* ).

"New York law with respect to disloyal or faithless performance of employment duties is grounded in the law of agency, and has developed for well over a century." *Phansalkar v. Andersen Weinroth & Co., L.P.,* 344 F.3d 184, 200 (2d Cir.2003). Courts applying New York law have used two different standards for the faithless servant doctrine, under which the misbehavior of a disloyal employee forfeits that employee's compensation. *See id.* at 201–02. One line of cases finds forfeiture where an employee's " 'misconduct and unfaithfulness ... substantially violates the contract of service.' " *Id.* at 201 (quoting *Turner v. Konwenhoven,* 100 N.Y. 115, 2 N.E. 637, 639 (1885)). When the second standard is applied, courts may find "that misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith is sufficient to warrant forfeiture." *Phansalkar,* 344 F.3d at 202 (citing *Lamdin v. Broadway Surface Adver. Corp.,* 272 N.Y. 133, 5 N.E.2d 66, 67 (1936)). "An employee who is found to be faithless normally forfeits all compensation received during the period of disloyalty, regardless of whether the employer suffered any damages." *Stanley v. Skowron,* 989 F.Supp.2d 356, 360 (S.D.N.Y.2013). Self-dealing is a sufficient basis for a finding that an employee has been a faithless servant within the meaning of the doctrine.

**2.** The heightened pleading requirements of Rule 9(b) are discussed in Part III.

*See Carco Grp., Inc. v. Maconachy,* 383 Fed.Appx. 73, 76–77 (2d Cir.2010).

## B. Breach of Fiduciary Duty

 YAI claims that Levy breached his fiduciary duty to the nonprofit, including his duties of loyalty and good faith. (*See generally* CC ¶¶ 104–114.) Again, YAI alleges that through "his false statements and self-interested actions, Levy breached his duty of loyalty and deprived YAI of his good judgment and services." (CC ¶ 113.) This claim also falls under New York law, and so YAI's counterclaim for breach of fiduciary duty involves three elements: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 138 (2d Cir.2011) (citations omitted). Fraud "is not an element of a claim for breach of fiduciary duty." *In re Grumman,* 329 B.R. at 429.

In a footnote in his reply brief, Levy raises for the first time the issue of the statute of limitations that applies to New York breach of fiduciary duty claims. (Levy Reply Br. at 3 n. 3.) This argument will not be considered for multiple reasons. First, it is well established that "[a]rguments may not be made for the first time in a reply brief." *Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir.1993). *See also Keefe on Behalf of Keefe v. Shalala,* 71 F.3d 1060, 1066 n. 2 (2d Cir.1995) ("Normally, we will not consider arguments raised for the first time in a reply brief. . . ."); *Schear v. Food Scope Am., Inc.,* 297 F.R.D. 114, 130 (S.D.N.Y.2014) (quoting *Knipe*); *Rowley v. City of New York,* 00 Civ. 1793(DAB), 2005 WL 2429514, at *5 (S.D.N.Y. Sept. 30, 2005) ("This Circuit has made clear it disfavors new issues being raised in reply papers."); 11 *Moore's Federal Practice* § 56.83, n. 5.1 (Matthew Bender 3d ed.) ("New arguments in reply may be disregarded.")

Additionally, the Court will not evaluate arguments that are so drastically underdeveloped, particularly when they are raised only in a footnote. *See Diesel v. Town of Lewisboro,* 232 F.3d 92, 110 (2d Cir.2000) (footnote in primary brief was insufficient to raise argument); *United States v. Restrepo,* 986 F.2d 1462, 1463 (2d Cir.1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review. The enormous volume of briefs and arguments pressed on each panel of this court at every sitting precludes our scouring through footnotes in search of some possibly meritorious point that counsel did not consider of sufficient importance to include as part of the argument."); *Rowley,* 2005 WL 2429514, at *6 ("As to an argument raised in a footnote . . . this also may not be properly considered.").

Finally, the Court notes that even if YAI's breach of fiduciary duty claim alone were to be dismissed, discovery under YAI's faithless servant claim would continue and would duplicate the discovery that would have taken place under the dismissed claim, as the elements of both claims substantially overlap. Thus, there is no benefit to judicial economy in further examining potential statute of limitations issues as to only one claim.

Because Levy raised the issue of the statute of limitations on this claim only in his reply, and only in a footnote, the issue is not properly presented and will not be considered.

## III. Whether YAI's Claims Sound in Fraud

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings need contain only a "short and plain statement of the grounds" showing (1) the court's jurisdiction; (2) the claim which entitles the plaintiff to relief; and (3) a demand for relief.

Fed.R.Civ.P. 8(a). Rule 9(b), however, sets out a heightened standard for pleading fraud or mistake, in which case "a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b).[3] Rule 9(b) "imposes an obligation on plaintiff to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 95 (2d Cir.2001) (citation and internal quotation marks omitted). This rule serves to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991) (internal quotation marks omitted). *See also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) (same policy goals).

Levy contends that YAI's breach of fiduciary duty claim sounds in fraud and thus should be subjected to a more stringent pleading standard.[4] Therefore, before proceeding further, the Court must determine whether the heightened pleading standards of Rule 9(b) apply, or whether YAI's breach of fiduciary duty counterclaim falls under the more relaxed standards of Rule 8(a).

## A. When a Claim Sounds in Fraud

■ Determining whether a non-fraud claim sounds in fraud "necessarily requires a case-by-case analysis." *In re Refco, Inc. Sec. Litig.*, 503 F.Supp.2d 611, 632 (S.D.N.Y.2007). "By its terms, Rule 9(b) applies to 'all averments of fraud.' This wording is cast in terms of the conduct alleged; and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (citation omitted). "Generally, a non-fraud claim will 'sound in fraud' if the claim arose out of events that the pleading describes in terms of fraud or the pleading includes a claim based on fraud, and the non-fraud claim incorporates the fraud allegations." *In re Grumman*, 329 B.R. at 429. Put another way, "[a] claim sounds in fraud when, although not an essential element of the claim, the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim." *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F.Supp.2d 258, 269 (S.D.N.Y.2004).

*Rombach* is the leading circuit case on when Rule 9(b) applies to non-fraud cases. There, the Court of Appeals held that a claim brought under Section 11 of the Securities Act of 1933 sounded in fraud because "the wording and imputations of the complaint are classically associated with fraud." 355 F.3d at 172. The Court of Appeals relied substantially on the com-

---

**3.** The wording of Rule 9(b) was changed as part of the 2007 restyling of the Federal Rules of Civil Procedure. As "[t]hese changes [were] intended to be stylistic only," they have no material effect on this case and the change in wording will not be considered. Fed. R.Civ.P. 9 advisory committee's notes (2007 Amendment). Thus, all other factors being equal, cases that pre-date this change are equally persuasive or binding as those that follow it.

**4.** Levy makes no specific argument, and cites no cases—and this Court has found none—holding that a faithless servant claim may sound in fraud. Thus, this Court considers Levy's Motion to Dismiss as only addressing YAI's counterclaim for breach of fiduciary duty. In any event, the same fraud analysis used to evaluate YAI's fiduciary duty claim would apply to YAI's faithless servant claim.

plaint's allegations that the registration statement for the secondary public offering was "inaccurate *and* misleading," that it contained "*untrue* statements of material facts," and that "materially *false* and *misleading* written statements" were issued. *Id.* at 172 (emphasis in original). In analyzing and applying *Rombach*, then-District Judge Gerald E. Lynch described this passage as "something of a conundrum, because applied literally, it would seem to require applying a 9(b) standard to all claims under § 11." *Refco*, 503 F.Supp.2d at 631; *see also id.* (noting that § 11 "applies when 'any part of the registration statement . . . contained an *untrue statement of a material fact or omitted to state a material fact* required to be stated therein or necessary to make the statements therein not misleading.' 15 U.S.C. § 77k(a) (emphasis added).") Accordingly, Judge Lynch concluded that the finding that the particular language in *Rombach* was indicative of fraud should be read in the context of the pleading at issue in that case, and that "*Rombach* necessarily requires a case-by-case analysis of particular pleadings to determine whether 'the gravamen of the complaint is plainly fraud.' " *Id.* at 632 (quoting *Rombach*, 355 F.3d at 172 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405, n. 2 (9th Cir.1996))). *See also In re CitiGroup Inc. Bond Litig.*, 723 F.Supp.2d 568, 586 (S.D.N.Y.2010) ("[A] court must 'closely scrutinize the pleadings' in their entirety so as to determine whether the 'claims sound in negligence or in fraud.' " (quoting *Ladmen Partners, Inc. v. Globalstar, Inc.*, 07 Civ. 0976(LAP), 2008 WL 4449280, at *11 (S.D.N.Y. Sept. 30, 2008))).

Courts have found non-fraud claims to sound in fraud where the underlying conduct alleged has been fraud or closely linked with fraudulent behavior, such as claims for which fraud is a necessary element or claims that the other party has attempted to induce action through mis-representations or material omissions. This can include claims for breach of fiduciary duty. *See Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, 11 Civ. 4362(PKC), 2012 WL 1890388, at *8 (S.D.N.Y. May 23, 2012) ("When a breach of fiduciary duty claim is premised upon fraudulent misconduct, Rule 9(b) applies."); *Rahl v. Bande*, 328 B.R. 387, 412 (Bankr.S.D.N.Y.2005) ("[T]he heightened pleading standard is applicable to breach of fiduciary claims only when the breach is premised on a defendant's fraudulent conduct.").

Levy argues that this case is on all fours with *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 02 MDL 1484(JFK), 2008 WL 2594819 (S.D.N.Y. June 26, 2008), and other cases applying Rule 9(b) to fiduciary duty claims. In *In re Merrill Lynch*, a securities broker formerly employed by defendant Merrill Lynch filed a proposed complaint in intervention (the "complaint") alleging that Merrill Lynch research analysts wrote reports that included "falsely positive ratings on the subject stocks in order to inflate artificially the share prices of the stocks and thus obtain lucrative investment banking business for Merrill Lynch." *Id.* at *1. When Merrill Lynch's fraudulent conduct was revealed, the stock prices fell, and the plaintiff-brokers were abandoned by their clients, resulting in lost future commissions. *Id.* The complaint alleged that Merrill Lynch's fraudulent conduct breached the fiduciary duty it owed to its employees. *Id.* In finding that the fiduciary duty claim sounded in fraud—and thus was subject to Rule 9(b)'s heightened pleading requirements—the district court found that "the entire basis" for the fiduciary duty claim rested in allegations of fraud. *Id.* at *9. The complaint alleged "a scheme to inflate artificially the price of the ML Stocks" that included "material false statements, in the form of falsely positive stock ratings

and comments" that "induced" the plaintiffs to act to their detriment. *Id.* The court concluded that these allegations were "clearly 'averments of fraud,' within the meaning of Rule 9(b)." *Id. See also Sotheby's, Inc. v. Minor,* 08 Civ. 7694(BSJ)(HBP), 2009 WL 3444887, at *8 (S.D.N.Y. Oct. 26, 2009) (breach of fiduciary duty claim alleging that Sotheby's "intentionally and in bad faith concealed ... its economic interests" in paintings in order to induce counter-plaintiff to purchase them averred fraud and therefore Rule 9(b) applied).

Other cases, however, have held that where the gravamen of a breach of fiduciary duty claim is not *plainly fraud,* Rule 9(b) does not apply. Thus, in *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.,* creditors in a bankruptcy proceeding alleged that DLJ Securities Corp., their financial advisor and investment banker in a merger transaction, breached its fiduciary duty to them by entering into interested director transactions. 00 Civ. 8688(WHP), 2002 WL 362794, at *1–4 (S.D.N.Y. Mar. 6, 2002). The district court first stated that "Rule 9(b) 'does not extend to allegations of breach of duty, whether or not characterized as fiduciary, by conduct not amounting to fraud or mistake.' " *Id.* at *8 (quoting *Shapiro v. Miami Oil Producers, Inc.,* 84 F.R.D. 234, 236 (D.Mass. 1979)). The court continued that the defendant's conduct did not amount to fraud. Rather, the court found that DLJ Securities Corp. "may be found to have breached its fiduciary duty ... by breaching its duties of care, disclosure and loyalty." *Id.* Accordingly, Rule 9(b) did not apply. Similarly, in *In re Grumman,* the bankruptcy court held that the fiduciary duty claims were not grounded in fraud. 329 B.R. at 430. Although the complaint alleged "a course of dishonest conduct involving self-dealing, misappropriation, [and] diversion of assets ... not every claim based on

dishonesty necessarily sounds in fraud." *Id. See also id.* ("Here, the Amended Complaint brands the defendants as thieves, not liars, and the pleading requirements imposed by Fed.R.Civ.P. 9(b) do not apply."); *Rahl,* 328 B.R. at 413 (fiduciary duty claims that do not allege "misrepresentations or omissions made in a[n] attempt to induce action by a third party" do not sound in fraud (citation and internal quotation marks omitted)); *Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.,* 964 F.Supp. 783, 804 (S.D.N.Y.1997) (holding heightened pleading standard of Rule 9(b) inapplicable to a breach of fiduciary duty claim not premised on fraud), *rev'd in part on other grounds sub nom. Strougo v. Bassini,* 282 F.3d 162 (2d Cir. 2002).

Finally, I look to the elements of fraud to determine whether YAI's breach of fiduciary duty claim is plainly fraud. *See Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir.2005) (comparing elements of fraud to elements for New York General Business Law § 349 to determine whether § 349 is subject to Rule 9(b) requirements); *Del Col v. Rice,* 11 Civ. 5138(MKB), 2013 WL 4052867, at *8–9 (E.D.N.Y. Aug. 12, 2013) (same comparison for § 1983 civil rights claim). *See also Monaco v. Carpinello,* 98 Civ. 3386(CPS), 2004 WL 3090598, at *9 (E.D.N.Y. July 22, 2004) (examining elements of fraud under New York law and finding that Rule 9(b) does not apply in part because "[p]laintiffs have not alleged that [certain information was] offered to deceive them or that they relied on these representations.").

 Under New York law, "[t]he elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 12

N.Y.3d 553, 883 N.Y.S.2d 147, 910 N.E.2d 976, 979 (2009). A plaintiff must also allege a causal link between the defendant's alleged conduct and the plaintiff's damages. *See Abbey v. Skokos,* 509 Fed.Appx. 92, 93 (2d Cir.2013) ("Reasonable reliance is an element of common law fraud under New York law...."). Otherwise said, a plaintiff must allege that the defendant's misrepresentations were the direct and proximate cause of the claimed losses. *See Laub v. Faessel,* 297 A.D.2d 28, 745 N.Y.S.2d 534, 536 (2d Dep't 2002). "To establish causation, plaintiff must show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation)." *Id.* (citation omitted). *See also Stutman v. Chemical Bank,* 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 612 (2000) (" 'A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance.' ") (quoting Restatement (Second) of Torts § 548A).

### B. Application to YAI's claims

Levy urges the Court to view the claims as alleging a "multi-faceted scheme" involving four "stages," and to find that each stage alleges fraudulent conduct. YAI counters that it has not alleged any scheme, and instead charges that Levy took self-interested actions to influence favorably his compensation and, in doing so, breached his duties to YAI. Although the Court does not agree that a four-staged scheme is a fair interpretation of YAI's claims, it provides a useful construct to analyze the alleged conduct as required by the Court of Appeals. *See Soley v. Wasserman,* 08 Civ. 9262(PAC), 2010 WL 931888, at *7–8 (S.D.N.Y. March 12, 2010) (a court must assess each ground underlying a breach of fiduciary duty claim and apply Rule 9(b) to those grounds sounding in fraud and Rule 8 to those that do not). Therefore, each set of YAI's allegations must be examined individually.

#### 1. 1999 Compensation Philosophy

First, YAI alleges that Levy drafted in substantial party YAI's 1999 Compensation Philosophy, which established a very high bar for determining his compensation level. There is nothing alleged in connection with this conduct to suggest that Levy misrepresented material facts when drafting the 1999 Compensation Philosophy or that it included materially false or misleading statements. Accordingly, the Court does not find any averment of fraud here. Rather, YAI here alleges that Levy was inappropriately interested or self-dealing—a breach of Levy's duty of loyalty. *See Official Comm. of Unsecured Creditors,* 2002 WL 362794, at *8.

#### 2. Compensation Consultants

Second, YAI alleges that Levy "exerted considerable influence" in setting his compensation by directing the Board to retain specific compensation consultants that he believed would recommend a favorable compensation level. Again, there is no allegation that Levy acted with fraudulent intent—for example, there is no allegation that the chosen compensation consultants were not qualified or were a sham. And while the reports may have been lacking in certain regards, the counterclaim does not allege that that was done at the behest of Levy. Moreover, the counterclaims make plain that all compensation decisions were made by the Executive Compensation Committee, and Levy was not on that Committee. Accordingly, Levy is not accused of fraudulent conduct pertaining to these particular allegations, but rather, as above, a breach of his duty of loyalty.

### 3. Misstatements to the Board

In what Levy characterizes as the third set of allegations, YAI alleges that Levy "made false representations to the Board and its committees" about the fiscal health of YAI. (CC ¶ 30.) This set of allegations may be seen as having the patina of fraud. YAI uses many of the "buzz words" associated with fraud claims to describe Levy's alleged false representations: "deliberate misrepresentations" (CC ¶ 4); "false representations" about "unallowable and fraudulent accounting practices" (CC ¶ 30); "falsely certified CFRs" (CC ¶ 71); "repeated certifications that ... were blatantly false" (CC ¶ 74). *See In re Grumman,* 329 B.R. at 430 (discussing "the usual 'buzz' words 'classically associated with fraud,'" such as "'inaccurate,' 'misleading,' 'untrue,' or 'false'"). Thus, a superficial reading of these allegations may suggest that they sound in fraud.

But missing from YAI's allegations are further statements that demonstrate that the gravamen of YAI's claim sounds in fraud. For example, although YAI alleges that financial performance was a "significant factor" in the Board's compensation decisions, YAI does not allege that Levy misrepresented the financial health of the company *to induce* a particular salary, or that YAI *reasonably* (or otherwise) *relied* on Levy's false statements *in setting his compensation.* (*See* CC ¶¶ 30, 86.) The closest YAI gets is to allege that the Board "relied on Levy's representations about YAI's financial performance ... *and* awarded Levy compensation targeted at the 90th percentile of allegedly comparable organizations, based on a Compensation Policy that he co-authored." (CC ¶ 99 (emphasis supplied).) This allegation alleges reliance, generally. But it does not allege that, upon reasonable reliance, YAI acted to its detriment because of Levy's statements. Indeed, it alleges that the Board acted because of the Compensation Policy. Nor does it allege that Levy acted (or misrepresented) with the specific intent to induce YAI to over-pay him.[5] Thus, missing from YAI's allegations are the types of causal links essential to showing fraud.

Because YAI does not plead the elements of fraud, it is unfair to require it to satisfy the heightened pleading standards. *See In re CitiGroup,* 723 F.Supp.2d at 587 (recognizing plaintiffs' choice to allege negligence and not fraud). Instead, YAI alleges that Levy breached his duties of care, disclosure and loyalty, which more faithfully sets out a breach of fiduciary duty claim. *See In re Grumman,* 329 B.R. at 430 ("[N]ot every claim based on dishonesty necessarily sounds in fraud."); *Official Comm. of Unsecured Creditors,* 2002 WL 362794, at *8.

### 4. False Certifications

Finally, in what Levy characterizes as the fourth type of alleged conduct, YAI alleges "on information and belief," that Levy certified the CFRs knowing that they contained misstatements and included improper accounting practices. If these allegations were based on fraud, then they suffer from the same deficiencies as those related to the alleged misstatements: that is, the complaint does not allege a causal connection between submitting false reimbursement forms to the State, and YAI's decision to pay Levy an amount it would not otherwise have. Again, there are allegations that Levy knew that the financial

---

**5.** Here, the Court is not suggesting that Levy's intent must be pled with particularity. *See* Fed.R.Civ.P. 9(b). But it must be pled. *See generally Iqbal,* 556 U.S. at 686–87, 129 S.Ct. 1937 ("Rule 9 merely excuses a party from pleading [ ] intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8.").

performance was inflated by improper accounting practices, and that he knew he was falsely certifying their accuracy and that they were supported by documentation. But YAI does not allege that Levy's false certifications themselves induced the organization to compensate Levy handsomely. Rather, it is Levy's alleged mismanagement of the organization, including by certifying improper accounting reports, that breached his duties of loyalty, care and good service to YAI. Otherwise stated, YAI accuses Levy of failing to perform his duties adequately and competently to protect YAI's interests by ensuring proper accounting that would not put YAI at risk of investigation or other negative consequences. It does not allege that Levy tricked the organization into taking action it would not otherwise have taken based on a specific misrepresentation.

Thus, because the breach of Levy's fiduciary duties of loyalty and good faith occurred without "fraud or mistake," Rule 9(b) is not triggered. Accordingly, YAI need not plead these allegations with particularity.

## IV. Whether YAI Has Sufficiently Pled Breach of Fiduciary Duty and Faithless Servant Claims

### A. Rule 8(a)

Because Rule 8(a) applies to YAI's claims, it need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). The Court takes all of YAI's non-conclusory, factual allegations as true for the purpose of evaluating Levy's Motion to Dismiss.

YAI meets its Rule 8(a) burden. During his tenure as CEO and Executive Director of YAI, Levy owed YAI fiduciary duties of loyalty, care and good faith. YAI alleges that Levy exerted improper control in setting his own compensation at levels that were excessive, including by helping to draft the executive compensation policy and hand-picking consultants favorable to his views. YAI also alleges that Levy failed to disclose to the Board improper accounting practice and misrepresented the financial health of the organization. These actions caused YAI to face lawsuits, pay a large settlement, and undergo monitoring that put its operations at risk. These allegations meet the required elements of both a claim for breach of fiduciary duty (existence of a duty, a knowing breach, and resulting damages) and a claim of faithless servant (misconduct that constitutes a breach of the duty of loyalty or good faith). In addition, YAI has pled its claims with sufficient detail to overcome any allegation that its counterclaims are conclusory.

### B. The Business Judgment Rule

▮▮▮ Levy contends that YAI's claims cannot proceed because the Court may not second-guess the actions of YAI's directors under the business judgment rule. New York's business judgment rule creates a presumption that a corporation's directors act in good faith and in the best interests of the corporation. *See Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1000 (1979). Thus, the rule "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Id.*

▮▮▮ Both parties also discuss New York Not–for–Profit Corporation Law ("N–PCL") § 717(a), which says that "[d]irectors and officers shall discharge the duties of their respective positions in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances." N.Y. Not–For–Profit Corp. Law § 717(a) (McKinney). Under N–PCL § 717(b), di-

rectors may rely on experts for matters outside their knowledge unless "they have knowledge concerning the matter in question that would cause such reliance to be unwarranted," in which case the reliance is not in good faith. "Moreover, it is well established that, as fiduciaries, board members bear a duty of loyalty to the corporation and 'may not profit improperly at the expense of their corporation.'" *S.H. & Helen R. Scheuer Family Found., Inc., By & Through Scheuer v. 61 Associates,* 179 A.D.2d 65, 582 N.Y.S.2d 662, 664–65 (1st Dep't 1992) (citations omitted). As both the business judgment rule and N–PCL § 717 hinge in relevant part on the good faith of the director and his compliance with his fiduciary duties, the Court will consider these issues together.

A complaint cannot be dismissed under the business judgment rule when a plaintiff alleges that a director was interested or otherwise did not act in good faith in corporate dealings. First, "[i]t is black-letter, settled law that when a corporate director or officer has an interest in a decision, the business judgment rule does not apply." *In re Croton River Club, Inc.,* 52 F.3d 41, 44 (2d Cir.1995). *See also Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1001 (directors may benefit from the rule "only if they possess a disinterested independence and do not stand in a dual relation which prevents an unprejudicial exercise of judgment."). This means that at the motion to dismiss stage, where the plaintiff's nonconclusory, factual allegations must be taken as true, "if plaintiff has made a prima facie showing of a lack of such disinterested independence ... the complaint may not be dismissed for failure to state a cause of action solely upon appli-

cation of the business judgment rule." *61 Associates,* 582 N.Y.S.2d at 664 (applying N–PCL § 717). "[W]hether there is a breach of duty by a director or officer becomes a question of fact which can be determined only after consideration of all the surrounding circumstances." *In re W.T. Grant Co.,* 10 B.R. 801, 804 (Bankr. S.D.N.Y.1981).[6] *See also Ackerman v. 305 E. 40th Owners Corp.,* 189 A.D.2d 665, 592 N.Y.S.2d 365, 367 (1st Dep't 1993) ("Pre-discovery dismissal of pleadings in the name of the business judgment rule is inappropriate where those pleadings suggest that the directors did not act in good faith." (citations omitted)).

This rule has been applied in both state and federal proceedings. In *Patrick v. Allen,* a district court refused to dismiss a claim that directors who were also members of an incorporated country club breached their fiduciary duties to the club and its shareholders on the basis of the business judgment rule because the plaintiff had sufficiently alleged that the directors were interested. 355 F.Supp.2d 704, 712 (S.D.N.Y.2005). "Because the question '[w]hether a director is 'interested' or 'independent' is generally regarded as a question of fact,' the issue does not lend itself to resolution on a motion to dismiss." *Id.* at 712 (quoting *Drobbin v. Nicolet Instrument Corp.,* 631 F.Supp. 860, 880 (S.D.N.Y.1986)). In *People ex rel. Schneiderman v. James,* 39 Misc.3d 1206(A), 971 N.Y.S.2d 73, 2013 WL 1390877 (N.Y.Sup.Ct.2013), a New York Supreme Court held that a not-for-profit's "minutes fail[ed] to establish, as a matter of law, that the use of [a specific fund] to finance [a particular] project was protected

---

**6.** *In re W.T. Grant,* like several other subsequently cited cases, applies New York Business Corporation Law ("BCL") § 717. The wording of N–PCL § 717 is substantially similar to that of BCL § 717, which states in relevant part that "[a] director shall perform

his duties as a director ... in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances." N.Y. Bus. Corp. Law § 717(a) (McKinney).

under the business judgment rule" because "[t]he complaint clearly allege[d] self-dealing and misconduct on the part of [the defendant]." *Id.* at *7.

By alleging that Levy was a faithless servant and breached his fiduciary duties, resulting in harm to YAI through the loss of money unfairly paid to Levy and through the investigation, endangerment of services and settlement paid by YAI, YAI has clearly met its burdens to overcome application of the business judgment rule, the N–PCL § 717 standard, and to satisfy the pleading requirements of Rule 8(a).

## V. Jurisdiction

The Court has diversity jurisdiction over YAI's counterclaims under 28 U.S.C. § 1332. There is diversity because YAI is based in New York and Levy is a citizen of Florida, and the amount in controversy is well above the $75,000 required by statute. Indeed, Levy invokes § 1332 diversity jurisdiction for his own state law claims. (Pls.' Third Am. Compl. ¶ 40.)

## CONCLUSION

For the reasons discussed above, Levy's motion to dismiss YAI's counterclaims should be DENIED. The parties shall immediately engage in discovery related to these claims regardless of any objections that may be filed. For any discovery rule that provides 30 days to act, the parties shall act within no more than 21 days. Any stay of discovery shall be sought from Judge Oetken.

\* \* \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a), (d) (adding three additional days when service is made under Fed.R.Civ.P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R.Civ.P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Oetken. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

**SO ORDERED.**