**11-1390-cv**
**Cohen v. Cohen**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: February 22, 2012          Decided: April 3, 2013)

Docket No. 11-1390-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


PATRICIA COHEN,

       *Plaintiff-Appellant*,

v.


S.A.C. TRADING CORP., S.A.C. CAPITAL MANAGEMENT, INC., S.A.C. CAPITAL
MANAGEMENT, LP, S.A.C. CAPITAL MANAGEMENT, LLC, S.A.C. CAPITAL
ADVISORS, LLC, S.A.C. CAPITAL ASSOCIATES, LLC, SIGMA CAPITAL
MANAGEMENT, LLC, BRETT LURIE, EDWARD BAO,

       *Defendants*,

STEVEN A. COHEN, DONALD T. COHEN, C.P.A., P.A.,

       *Defendants-Appellees*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Before:   LEVAL, SACK, HALL, *Circuit Judges*.

Plaintiff Patricia Cohen appeals from a judgment of the United States District Court for the Southern District of New York (Holwell, *J.*) dismissing her claims for failure to state a claim and untimeliness. The Court of Appeals (Leval, *J.*) holds the claims were sufficiently stated and the Racketeer Influenced and Corrupt Organizations Act, common law fraud, and breach of fiduciary duty claims were timely, while the unjust enrichment claim was untimely and properly dismissed. Accordingly, the judgment of the district court is **AFFIRMED IN PART** and **VACATED AND REMANDED IN PART**.

Howard W. Foster, Foster PC, Chicago, IL, for *Appellant*.

Martin Klotz (John R. Oller, Jeffrey B. Korn, *on the brief*), Willkie Farr & Gallagher LLP, New York, NY, for *Appellees*.

LEVAL, *Circuit Judge*:

Plaintiff Patricia Cohen appeals from the judgment of the United States District Court for the Southern District of New York (Holwell, *J.*) dismissing her claims against her ex-husband Steven Cohen and his brother Donald Cohen for failure to state a claim and untimeliness. Against both defendants, the complaint alleges a fraud-based violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d), common law fraud, and breach of fiduciary duty. Against Steven, it alleges also unjust enrichment. We hold that the district court's reasons for dismissing the fraud-based claims were erroneous and that the court erred in ruling on the existing record that the RICO, common law fraud, and breach of fiduciary duty claims were time-barred. We sustain the dismissal of the unjust enrichment claim as untimely.

## I. BACKGROUND

The Second Amended Complaint (the "complaint") alleges the following facts:

Patricia and Steven were married in 1979. At the time, Steven was a trader at Gruntal & Co. ("Gruntal"). In January 1986, Steven created S.A.C. Trading Corporation ("SAC"), and served as its President, while his brother, defendant Donald, served as Treasurer, and Brett Lurie served as its Secretary and attorney. Donald also served as Patricia and Steven's personal accountant and financial advisor, and Lurie served as Patricia's attorney.

In early 1986, Steven, through SAC, invested approximately $9 million with Lurie to purchase interests in real estate in New York City to be converted to co-op apartments (the "Lurie Investment"). Later that year, Steven and Donald told Patricia that the entire value of the Lurie Investment had been lost, whereas in fact, by January 1987, Lurie had returned $5.5 million of the investment in settlement of a claim Steven had brought against him. Patricia was never told of Lurie's payment. Steven continued to carry the Lurie Investment on SAC's books at $8,745,169. According to the complaint, Steven and Donald told Patricia that it was worthless but could not be written off until the properties went into foreclosure or bankruptcy.

*The 1989 Separation Agreement*

Steven and Patricia separated in 1988 and eventually divorced. They reached a separation agreement in 1989 (the "1989 Separation Agreement"). The 1989 Separation Agreement provided that:

14.4.  Each party has acknowledged a degree of familiarity with and knowledge of the financial circumstances of the other and each party is of the opinion that he and she are sufficiently informed of income, assets, property and financial prospects of the other. *Husband has provided wife with his net worth statement and the statement of financial condition dated as of July 1, 1988*, provided, however, that Husband

3

makes no representation as to the value of the interest in a second and third mortgage on various properties involved in cooperative conversions in Queens, New York [the Lurie Investment] in which the investment was listed on his statement of financial condition dated as of July 1, 1988 at a value of $8,745,169.

14.5 Each party acknowledges that respective counsel have advised that under the Equitable Distribution Law of the State they are each entitled to a full disclosure and valuation of all property owned by the other party and that the complete financial disclosure which could be required if this matter continued in litigation has not been obtained, but both parties have advised their counsel that they are aware of these facts and desire to curtail discovery, are unwilling to litigate the issues and desire to proceed with this Agreement on the limited financial data supplied to date and their own knowledge of the other party's financial affairs.

Joint App'x at 165-66 (emphasis added). It also included a provision to the effect that the

agreement is "entire and complete" and that "[n]o representations or warranties have been made

by either party to the other, or by anyone else, except as expressly set forth in this Agreement."

*Id.* at 172.

During the negotiations leading to the 1989 Separation Agreement, Donald and Steven

prepared and sent to Patricia a "Statement of Financial Condition" ("Financial Statement"),

which purported to disclose all of Steven and Patricia's marital assets as of July 1, 1988. The

Financial Statement listed Steven's assets as totaling $18,229,527 (of which approximately

$200,000 was cash) and liabilities as totaling $1,298,990, for a total net worth of $16,930,537.

The Financial Statement reflected the Lurie Investment valued at $8,745,169. Steven's lawyer

told Patricia that the Lurie money was "lost." *Id.* at 76.

*The 1992 Separation Agreement*

In 1991, Patricia brought a motion in the Supreme Court of New York, seeking to

increase maintenance, child support, and other relief from the 1989 Separation Agreement and

4

the March 13, 1990 divorce decree. She sought to set aside the financial provisions of the 1989 Separation Agreement "upon the grounds that it is unconscionable and was procured by fraud and economic duress." Order to Show Cause for Modification Upward of Child Support and Maintenance at 2, *Cohen v. Cohen*, No. 62593/90 (N.Y. Sup. Ct. Mar. 21, 1991). Patricia swore in an affidavit in support of her motion that Steven did not disclose his income for 1989, and "[t]his failure to disclose by itself should be sufficient to set aside the maintenance and support provisions of the Separation Agreement." Affidavit of Patricia Cohen at 2-3, *Cohen v. Cohen*, No. 62593/90 (N.Y. Sup. Ct. Mar. 20, 1991). She also claimed that Steven "took everything else of value, primarily art works and his investment of $9.5 million in a real estate deal with Brett Lurie." *Id.* at 3. Additionally, her attorney affirmed in an affidavit:

> [Patricia] and I believe that Mr. Cohen has not truthfully stated his income. Upon information and belief, Mr. Cohen did one of the following: (1) had payments of his income made to his wholly owned corporation, S.A.C. Trading Corp., (2) had payments of his income made directly to his brother Donald, who is his accountant, or (3) deferred payment of his compensation to a later year so that his income tax return during 1989 did not show his true income.

Reply Affirmation of Martin S. Kera at 2, *Cohen v. Cohen*, No. 62593/90 (N.Y. Sup. Ct. May 8, 1991). Patricia also claimed that Steven misrepresented income he received from Gruntal.

In opposition, Steven stated that "[t]he Brett-Lurie deal is presently involved in bankruptcy proceedings. Even [at the time the Financial Statement was prepared,] I suspected that this would happen because the general partner [Lurie] was in default. I am writing it off as totally worthless. Subtracting the value of Brett-Lurie from my net assets at that time means that my net worth was $8,185,368." Affidavit of Steven Cohen at 9, *Cohen v. Cohen*, No. 62593/90 (N.Y. Sup. Ct. May 1, 1991).

5

Patricia later withdrew her argument that the 1989 Separation Agreement was procured by fraud and economic duress. Decision and Order, *Cohen v. Cohen*, No. 62593/90 (N.Y. Sup. Ct. Aug. 6, 1991). Instead, she and Steven executed an amended Settlement Agreement in January 1992.

*The Lawsuit*

In 2006, Patricia read an article about the fraud conviction of an individual who worked at Steven's former employer, Gruntal, and began investigating the representations Gruntal had made to her during the 1989 and 1991 proceedings. Patricia asserts that, as a result of the investigation, in August 2008 she chanced upon a court file of a suit brought by Steven against Brett Lurie, *Steven Cohen and SAC Trading Corp. v. Brett Lurie and Conversion Funding Corp.*, No. 8981/87 (N.Y. Sup. Ct.), where she found reference to the $5.5 million payment from Lurie to Steven. As a result of that discovery, on December 16, 2009, Patricia commenced this action in the United States District Court for the Southern District of New York, alleging that, in falsely representing the Lurie Investment as worthless and concealing the $5.5 million received on its account, defendants conspired in violation of RICO, committed common law fraud, and breached fiduciary duties, and that Steven was unjustly enriched.

On March 30, 2011, the district court granted a motion to dismiss all Patricia's claims, ruling that the complaint did not adequately allege fraud and that the claims were time-barred.

**II.  DISCUSSION**

A.  *Sufficiency of the Pleading*

Patricia contends the court erred in concluding that the allegations of her complaint were insufficient. We review a district court's grant of a motion to dismiss *de novo*, accepting as true

6

the complaint's factual allegations and drawing all inferences in the plaintiff's favor. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Claims that sound in fraud are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b), which requires that averments of fraud be "state[d] with particularity." To satisfy this requirement, a complaint must "specify the time, place, speaker, and content of the alleged misrepresentations," "explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (alteration in original) (internal quotation marks omitted). This standard also applies to allegations of fraudulent predicate acts supporting a RICO claim. *First Capital Asset Mgmt.*, 385 F.3d at 178-79.

Patricia's claims are based on four allegedly fraudulent statements: (1) Steven and Donald's statement in 1986 that the entire value of the Lurie Investment had been lost; (2) the statement of Steven and his attorney during the negotiations surrounding the 1989 Separation Agreement that the Lurie Investment was "lost" but continued to be carried on the books at its original value because it could not be written off until there was a bankruptcy or foreclosure decree; (3) Steven's statement in the 1989 Separation Agreement that he had "provided wife with his net worth statement and the statement of financial condition dated as of July 1, 1988," Joint App'x at 165-66; and (4) Steven's statement in his 1991 affidavit that he was writing off the Lurie Investment as worthless and that the deduction of this investment from his net assets in 1989 reduced his net worth to $8,185,368.

7

As to the first statement, made in 1986, we agree with the district court that the complaint did not sufficiently allege that it was fraudulent because there is no allegation that Steven and Donald knew or had reason to know at the time that Lurie would repay approximately 63% of the investment months later in 1987.

As for the remaining allegedly fraudulent statements, we conclude that the reasons given by the district court in justification for finding them legally insufficient were not valid reasons. The second allegedly fraudulent statement specified in the complaint is the statement made by both Steven and his attorney that the money involved in the Lurie Investment "was lost." The complaint asserts that this statement was fraudulent because Steven had in fact received from Lurie a repayment of $5.5 million on account of the investment. The district court concluded this did not sufficiently allege fraud because the $5.5 million received on account of the real estate investment was separate from it, so that it was possible that the real estate Steven continued to hold had a value of zero notwithstanding his previous receipt of $5.5 million on account of the investment. Thus, under the district court's reasoning, the statement was not false. But the allegation was not simply that the Lurie Investment had a greater value at the time the statement was made than the zero value Steven claimed. The allegation was also, alternatively, that Steven falsely represented that the moneys invested with Lurie had been "lost," whereas in fact only one-third had been lost, given Lurie's settlement payment. The court gave no adequate reason for dismissing that claim of fraud.

The third allegedly fraudulent statement was Steven's certification in the 1989 Separation Agreement of the accuracy of the Financial Statement disclosed as part of the agreement, which allegedly failed to include the $5.5 million received from Lurie. The district court concluded that

8

these allegations were insufficient because Steven's receipt of $5.5 million in 1987 was not incompatible with a financial statement as of July 1, 1988, showing a net worth of $8,185,368,[1] given the possibility that, in the intervening year, Steven had lost the $5.5 million or that the $5.5 million was included in the larger amount of assets shown in the Financial Statement. The court's reasoning is not persuasive and reflects a misunderstanding of *Iqbal*, which requires assertions of facts supporting a *plausible* inference of fraud—not of facts which can have no conceivable other explanation, no matter how improbable that explanation may be.

Given the large size of the amounts involved and the relatively short time period between Steven's receipt of $5.5 million and the Financial Statement, the more plausible inference was that Steven had not lost, spent, or dissipated the $5.5 million by the time he set forth his assets slightly over a year later. According to the district court's reasoning, the passage of a week, a day, even an hour or minute, between Steven's receipt of the $5.5 million and his subsequent certification of his assets would leave open the possibility that the entire amount might have disappeared in the interval. The facts pleaded, however, support a plausible inference that he had not frittered away two-thirds of his assets in that short time. The improbable (although conceivable) possibility that he might have lost the money did not defeat the sufficiency of the pleading, which supported a wholly plausible inference that he retained the money.

Nor was the second possibility considered by the court sufficient reason to dismiss the complaint. It was indeed possible, as the district court speculated, that the $5.5 million received from Lurie was shown in the Financial Statement, as a part of the total listed assets of

---

[1] If the Lurie Investment, listed in the Financial Statement at $8,745,169, was in fact worth nothing, as Steven had allegedly told Patricia, Steven's assets as reflected in the Financial Statement would have been $9,484,358, and his net worth would have been $8,185,368.

$9,484,358 (after subtracting out the $8,745,169 listed for the worthless Lurie Investment). But this speculation failed to read the allegations of the complaint as a whole in context. Given the fact that the complaint also alleged that, shortly before, in the negotiations leading up to the 1989 Separation Agreement, Steven had fraudulently concealed from Patricia his receipt of the $5.5 million settlement by telling her that the Lurie Investment had been lost, the more plausible inference from the totality of the facts alleged was that Steven adhered to that course of conduct in reaching the 1989 Separation Agreement and did not suddenly change course, disclosing in good faith the assets he had so recently fraudulently concealed. Once again, *Iqbal* requires that the complaint assert facts that plausibly support the inference of fraud. It does not require that all other conceivable possibilities be excluded. Given the plausible allegation that in negotiating the 1989 Separation Agreement Steven concealed his receipt of $5.5 million from Lurie and the plausible allegation that he continued to conceal that money in his Financial Statement incorporated into that agreement, we reject the district court's conclusion that the pleading failed the *Iqbal* test because of the conceivable possibility that the Lurie payment was disclosed in the Financial Statement.

Because we conclude the reasons given by the district court for dismissal of the claims based on fraud for failure to state a claim were erroneous, we vacate the judgment to the extent based on inadequate pleading of the second, third, and fourth allegedly fraudulent statements, and remand to the district court. We recognize that the defendants asserted additional grounds for dismissal in their motion papers. We express no views on those, but leave them to be considered on remand.[2]

---

[2] Needless to say, the opinion should not be construed as expressing any view as to whether there is any merit in the claims of fraud. The question before us is limited to whether the allegations of the complaint are sufficient to go forward to be tested at trial. Our finding that they are sufficient suggests no belief one way or the other as to whether they are true.

B. *Statute of Limitations*

The court ruled that the claims under RICO, common law fraud, breach of fiduciary duties, and unjust enrichment were time-barred. As to the claim of unjust enrichment, we agree. As to the others, we believe the court erred.

*1. Claims of RICO, Fraud, and Breach of Fiduciary Duty*

The statute of limitations for a civil RICO claim is four years. *Rotella v. Wood*, 528 U.S. 549, 552 (2000)*; Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987). Under New York law, claims of common law fraud and of breach of fiduciary duty based on fraud are generally subject to six-year statutes of limitations.[3] *See Sargiss v. Magarelli*, 12 N.Y.3d 527, 532 (2009); *Kaufman v. Cohen*, 307 A.D.2d 113, 118 (1st Dep't 2003). In RICO cases, we have applied a discovery accrual rule, under which the limitations period begins to run "when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998); *see also Rotella*, 528 U.S. at 555. In other words, "the limitations period does not begin to run until [the plaintiff has] actual or inquiry notice of the injury." *In re Merrill Lynch*, 154 F.3d at 60. The New York rule is similar as to fraud and fraudulent breach of fiduciary duty. *See Sargiss*, 12 N.Y.3d at 532; *Kaufman*, 307 A.D.2d at 122-23.

---

[3] More precisely, the New York statute of limitations for a common law fraud claim is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). Additionally, the statute of limitations for breach of fiduciary duty claims is either three or six years, depending on the nature of the relief sought by the plaintiff. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009). These nuances, however, do not affect our analysis.

11

With respect to inquiry notice, a duty to inquire is triggered by information that "relates directly to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants." *Newman v. Warnaco Grp.*, 335 F.3d 187, 193 (2d Cir. 2003). The triggering information "need not detail every aspect of the [subsequently] alleged fraudulent scheme." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 427 (2d Cir. 2008). In turn, the date on which knowledge of a fraud will be imputed to a plaintiff can depend on the plaintiff's investigative efforts. If the plaintiff makes no inquiry once the duty to inquire arises, "'knowledge will be imputed as of the date the duty arose.'" *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161,168 (2d Cir. 2005) (quoting *LC Capital Partners, LP v. Frontier Ins. Grp.*, 318 F.3d 148, 154 (2d Cir. 2003)). And "if some inquiry is made, '[the court] will impute knowledge of what [a plaintiff] in the exercise of reasonable diligence[] should have discovered concerning the fraud, and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud.'" *Lentell*, 396 F.3d at 168 (quoting *LC Capital Partners*, 318 F.3d at 154) (third alteration in original). Although determining whether a plaintiff had sufficient facts to place her on inquiry notice is "often inappropriate for resolution on a motion to dismiss," we have found dismissal appropriate "'[w]here . . . the facts needed for determination of when a reasonable [plaintiff] of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers . . . integral to the complaint.'" *LC Capital Partners*, 318 F.3d at 154 (quoting *Dodds v. Signa Sec., Inc.*, 12 F.3d 346, 352 n.3 (2d Cir. 1993)) (second and fourth alterations in original).

The district court concluded that, in 1991, Patricia was on inquiry notice of Steven's fraudulent concealment of the $5.5 million Lurie payment. The reasoning supporting that conclusion was the following: In 1991, when Patricia moved for increased support payments, she

12

suspected Steven of concealing some payments she believed were due him and she found in her contemporaneous investigation that he was owed some income he had not revealed to her. She also suspected Steven of falsely understating the value of the Lurie Investment when he told her it was worthless. Years later, while investigating her suspicions that Steven had received undisclosed Gruntal income, Patricia happened upon court records of Steven's suit against Lurie. These circumstances, in the district court's view, put Patricia on inquiry notice, requiring investigation which would have revealed the concealed $5.5 million payment.

We disagree with the district court that those circumstances put Patricia on inquiry notice in 1991 of Steven's alleged fraud with respect to his concealment of the Lurie payment. We believe there were at least two flaws in the district court's reasoning. First, the court appears to have assumed that because Patricia had suspicions in 1991 and did not find the Lurie payment, it follows that her investigation at the time was less than reasonable. There is no basis in the record for that conclusion. Inquiry notice imposes an obligation of reasonable diligence. *See Lentell*, 396 F.3d at 168 (the court "'will impute knowledge of what [a plaintiff] *in the exercise of reasonable diligence*[] should have discovered'" (emphasis added) (quoting *LC Capital Partners*, 318 F.3d at 154)). Assuming that Patricia's awareness in 1991 of information indicating that Steven had concealed and underreported his 1989 income from Gruntal in the 1989 Separation Agreement should have made her suspicious of more widespread concealment of assets, triggering a duty to inquire, *see Staehr*, 547 F.3d at 434, it does not follow that she was chargeable with an awareness of any and all monies Steven may have received and concealed, regardless of whether a reasonable investigation based on what she knew would have revealed it. The district court had no basis on the record before it to conclude that the investigation that Patricia made in 1991 was not reasonable.

Second, even assuming that the duty to make a reasonable investigation in 1991, given what Patricia knew, required her to do more than she did, there is no adequate reason on this record to conclude that such further reasonable diligence would have revealed the Lurie lawsuit. While in some cases we have found that a plaintiff, in the exercise of reasonable diligence, should have discovered public lawsuits, *see, e.g., Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir. 1975), *abrogated on other grounds by Menowitz v. Brown*, 991 F.2d 36 (2d Cir. 1993) (plaintiff of reasonable diligence would have discovered alleged fraud at same time as earlier well-publicized lawsuits against defendant by the SEC and other private plaintiffs alleging the same fraud), it does not follow that reasonable diligence will in all circumstances result in discovery of any lawsuit. The facts in the present record do not support a conclusion that reasonable diligence would have uncovered Steven's lawsuit against Lurie, as the information available to Patricia in 1991 did not suggest in any way that Steven had sued Lurie, much less that he received a concealed payment in settlement of the suit. There is no indication that the suit received any publicity, or that it "result[ed] in published or broadly disseminated opinions." *Staehr*, 547 F.3d at 435. Furthermore, that suit was brought *by* Steven. It was not a suit *against* Steven accusing him of fraud. While one who suspects a defendant of widespread fraud may be under a duty to see if others have sued the defendant and whether such suits revealed evidence of the fraud of which the plaintiff complains, the fact that Patricia suspected Steven of defrauding her does not logically suggest that she was under a duty to investigate to see what suits Steven may have brought against others. Additionally, the fact learned in hindsight that Patricia discovered Steven's suit against Lurie in a later investigation does not mean, based on our review of the record, that she would have discovered the Lurie payment in

14

the course of a reasonable investigation in 1991. While hindsight shows that the fraud *could* have been discovered, that fact does not support the conclusion that, on reasonable inquiry, the fraud *would* have been discovered. *Cf. Int'l Ladies' Garment Workers Union, AFL-CIO v. N.L.R.B.*, 463 F.2d 907, 923 (D.C. Cir. 1972) ("To be sure, once the clue is uncovered its significance seems patent and its discovery easy, but it is not a new phenomenon that the seemingly obvious becomes so only after its discovery has eluded a good many others. Hindsight does not convict these others of want of reasonable diligence.").

Nor did the fact that Patricia had and expressed suspicions in 1991 that Steven was lying in telling her that the Lurie Investment was worthless put her on inquiry notice of the concealed fact that he had sued Lurie and received a $5.5 million settlement payment. We reach this conclusion for several reasons. For one, the suspicion she expressed had nothing to do with a possibility that Steven might have had a dispute with Lurie and received a concealed case settlement. To the contrary, her suspicion was that the Lurie Investment, which Steven told her was worthless, in fact had value. Second, inquiry notice is triggered by awareness of *facts* which a reasonable person would investigate; it is not triggered by unfounded suspicions. So far as the record revealed, Patricia's suspicions that Steven had concealed payments due him and that the Lurie Investment was more valuable than Steven claimed were based on nothing but intuition or wishful thinking. The record includes no fact known to Patricia in 1991 that gave rise to any duty to investigate the Lurie matter. The fact that she distrusted her former husband and thought he might be lying is not an objective fact that supports a duty to investigate.

15

We conclude that, at least on the record before the district court, there was no basis to dismiss Patricia's fraud-based claims as untimely. We vacate those rulings and reinstate these claims.[4]

### 2. *Unjust Enrichment Claim*

We agree with the district court that Patricia's claim for unjust enrichment is time-barred. Under New York law, the six-year limitations period for unjust enrichment accrues "upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." *Coombs v. Jervier*, 74 A.D.3d 724, 724 (2d Dep't 2010) (internal quotation marks omitted). The latest-in-time wrongful act pleaded in the complaint occurred in 1991, when Steven allegedly stated that he was writing the Lurie Investment off as worthless and that his net worth as of 1989 was approximately $8 million. The claim for unjust enrichment, instituted in 2009, was well outside the six-year statute of limitations.

## III. CONCLUSION

For the foregoing reasons, we **VACATE** the district court's judgment dismissing plaintiff's claims based in fraud and breach of fiduciary duty as time-barred and for failure to state a claim upon which relief may be granted, and **REMAND** those claims for further proceedings not inconsistent with the opinion. We **AFFIRM** the dismissal of the claim of unjust enrichment, as time-barred.

---

[4] We address only whether the claims are time-barred based on the record before the district court, which consisted solely of plaintiff's complaint. Our finding that the record before the district court cannot support the district court's conclusion that the fraud-based claims were time-barred is not intended to suggest or express any view with respect to any future statute of limitations argument based on proven facts.