16-3189-cv
Rosenshein v. Meshel

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of April, two thousand seventeen.

PRESENT:  REENA RAGGI,
　　　　　　DENNY CHIN,
　　　　　　SUSAN L. CARNEY,
　　　　　　　　　　　*Circuit Judges*.

ARNOLD ROSENSHEIN, dba PARK WEST REALTY CO.,

　　　　　　　　　　　*Plaintiff-Appellant*,

　　　　v.　　　　　　　　　　　　　　　　　　　No. 16-3189-cv

JEFFREY MESHEL, PARADIGM CREDIT CORP., MERCURY CREDIT CORP., PARADIGM CAPITAL GROUP, LLC, PARADIGM CAPITAL FUNDING, LLC, MERCURY CAPITAL CORP., PARADIGM MONROE CENTER III, LLC, PARADIGM EXCHANGE LLC, EXCHANGE PARTNERS GROUP LLC, PCF EXCHANGE LLC, PARADIGM ELIZABETH LLC, PARADIGM EAST HANOVER LLC, EAST HANOVER PARTNERS LLC, TULIPAN INDURSKY & SONS LLC,

　　　　　　　　　*Defendants-Cross-Defendants-Appellees*,

WAYNE STURMAN, JOHN DOES, ABC CORPS., DAVID KUSHNER,

　　　　　　　　　　　*Defendants-Appellees*,

MARC GLEITMAN,

　　　　　　　　　*Defendant-Cross-Claimant-Appellee.*

APPEARING FOR APPELLANT:   MICHAEL C. BARROWS, The Law Offices of Anthony A. Capetola LLC, Williston Park, New York.

APPEARING FOR APPELLEES:   MICHAEL WEXELBAUM (Larry Hutcher, *on the brief*), Davidoff Hutcher & Citron LLP, New York, New York, *for* Defendants-Cross-Defendants-Appellees and Defendants-Appellees.

DAVID EDELBERG (Alissa K. Piccione, *on the brief*), Cullen and Dykman LLP, Hackensack, New Jersey, *for* Defendant-Cross-Claimant-Appellee.

Appeal from a judgment of the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on August 29, 2016, is AFFIRMED.

Plaintiff Arnold Rosenshein, a real estate investor, sued defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as well as New York state law, for fraudulently inducing his investment in high risk commercial loans by falsely representing them as low risk. Rosenshein now appeals the dismissal of his complaint as barred by the statute of limitations.[1] We review such a dismissal *de novo. See Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015). In doing so, we assume the parties' familiarity with the facts

---

[1] The district court held Rosenshein's RICO claims time-barred, whereupon it declined to exercise supplemental jurisdiction over his state law claims. *See New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) (upholding district court's declination to exercise supplemental jurisdiction when federal claims failed).

and procedural history of this case, which we reference only as necessary to explain our decision to affirm for substantially the reasons stated by the district court in its August 26, 2016 decision and order. *See Rosenshein v. Kushner*, No. 15CV7397 DLC, 2016 WL 4508756 (S.D.N.Y. Aug. 26, 2016).

1.    RICO Statute of Limitations

A four-year statute of limitations applies to civil RICO claims. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012). The timeliness of a civil RICO claim depends on a twin determination of (1) when the plaintiff sustained the alleged injury for which he seeks redress, and (2) when the plaintiff discovered or should have discovered the injury, with the latter date triggering the four-year statute of limitations. *See id.* at 150–51; *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) ("Thus, even if [an] investor['s] injury occurred at the time [he] invested, the limitations period does not begin to run until [he] ha[s] actual or inquiry notice of the injury.").

A RICO injury occurs when the "amount of damages becomes clear and definite." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994); *accord Chevron Corp. v. Donziger*, 833 F.3d 74, 140 (2d Cir. 2016). A RICO claim predicated on an investment injury for which an investor has no contractual or legal remedies generally accrues at the time of investment. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d at 59. Rosenshein, however, contends that his injuries from defendants' misrepresentations, both at the time of investment and in follow-up communications, arose only when property subject to the underlying mortgage loans was lost to foreclosure. We are not persuaded. Taking the verified complaint's allegations as true,

3

*see Barrows v. Burwell*, 777 F.3d 106, 111 (2d Cir. 2015), the investments at issue were unsecured, and Rosenshein lacked any right to make decisions relating to the underlying loans or to pursue remedies for non-payment against borrowers. Indeed, Rosenshein explicitly pleads that under the agreements between him and defendants, he was "not permitted to participate in any of the decisions relating to the loans," "waive[d] complete control over the loan and the monies" he invested, and had "no recorded collateral or security interest in any mortgage or property." App'x 257–58.

Although a court need not accept a complaint's allegations when they are contradicted by exhibits attached thereto, *see Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016), that principle is unavailing here. Rosenshein maintains that the attached participation and servicing agreement pertaining to the "24th Street" investment demonstrates that *all* of his investments were secured. That is not so. First, this document expressly controls only the "24th Street" investment and does not govern any other investment at issue. App'x 329. Accordingly, we must take the complaint's allegations as true with regard to the remaining investments. Second, even if the "24th Street" investment was secured by the underlying mortgage's collateral, that status is not meaningful here because the agreement expressly states that the Lead Lender—not Rosenshein—"shall determine and control what actions shall be taken in connection with any [] default or Event of Default." *See id.* at 333. In sum, because the agreement guarantees Rosenshein no legal or contractual remedies for his alleged injury, his RICO claim with respect to that investment accrued at the time of investment.

4

The servicing contracts submitted to the district court warrant no different conclusion with respect to Rosenshein's other investments, as these documents are not inconsistent with the complaint's allegations that Rosenshein lacked a security interest and had no right to pursue remedies himself against the borrowers in the event of a default. App'x 257–68. Thus, Rosenshein's RICO claim accrued no later than 2008, when the most recent investment was made, because his legally cognizable injuries occurred at the time of each investment.[2]

We recognize that "in some instances a continuing series of fraudulent transactions undertaken within a common scheme can produce multiple injuries which each have separate limitations periods." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d at 59. Nevertheless, such injuries have "to be new and independent to be actionable." *Id.* Rosenshein argues that because he did not learn about the loss of portions of his investment until certain foreclosures in 2011, a new injury then accrued that started the limitations period. Like the district court, we conclude that the separate-accrual rule is inapplicable here because, as we just explained, Rosenshein's injuries occurred when he made the allegedly fraudulent investments. The multiple foreclosures that occurred through 2011 did not constitute new and independent injuries; rather, they were merely symptoms of Rosenshein's pre-existing injuries and, therefore, have no bearing on the limitations analysis or on our conclusion that Rosenshein's RICO claims accrued no later than 2008.

---

[2] Because Rosenshein's alleged RICO injuries occurred at the time of investment, rather than upon foreclosure on underlying collateral, we need not reach his argument that defendants failed to establish the dates of foreclosures.

Once a RICO claim accrues, the statute of limitations begins to run when a plaintiff has actual or inquiry notice of the claim. *See Koch v. Christie's Int'l PLC*, 699 F.3d at 151. "Storm warnings" provide inquiry notice when "the circumstances would suggest to an investor of ordinary intelligence the probability that [he or] she has been defrauded." *Id.* (internal quotation marks omitted); *see also Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (observing that "duty to inquire is triggered by [knowledge of] information that relates directly to the misrepresentations and omissions" later claimed by plaintiff to constitute fraud (citation and internal quotation marks omitted)). Storm warnings "need not detail every aspect of the alleged fraudulent scheme," and can trigger the statute of limitations "even where the full extent of the RICO scheme is not discovered until a later date." *Koch v. Christie's Int'l PLC*, 699 F.3d at 151 (internal quotation marks omitted).

"If the plaintiff makes no inquiry once the duty to inquire arises, knowledge will be imputed as of the date the duty arose." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d at 361–62 (citation and internal quotation marks omitted). Where "some inquiry is made," the court "will impute knowledge of what [a plaintiff] in the exercise of reasonable diligence[] should have discovered concerning the fraud, and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud." *Id.* at 362 (alterations in original) (citation and internal quotation marks omitted).

Here, storm warnings provided inquiry notice more than four years before Rosenshein filed suit on September 18, 2015. As the district court observed, the cascade of setbacks that the investment suffered would have caused a reasonable investor to

6

suspect fraud and make further inquiries into the accuracy of defendants' representations regarding the collateral for and the risk associated with the loans. The fact that these events coincided with the 2008 financial crisis warrants no different conclusion. By the end of 2009, at least ten borrowers had defaulted on the loans at issue. Further, by that time, defendants had commenced foreclosure or other efforts to assume ownership of the collateral for most of the properties. Yet the process dragged on, and defendants offered assorted excuses for being unable to complete the process and sell the properties in a timely fashion, by contrast to their initial predictions of easy sales at amounts in excess of the loans. These circumstances constituted storm warnings that would put a reasonable investor on inquiry notice of fraud.

Because inquiry notice was thus triggered outside the limitations period, and because Rosenshein failed to conduct any investigation, we conclude that the September 18, 2015 filing of his claims was untimely.

2.    Equitable Tolling

Rosenshein argues that issues of fact remain as to whether defendants' fraudulent concealment tolled the statute of limitations. To secure such equitable relief, Rosenshein must show (1) wrongful concealment by defendants, that (2) prevented his discovery of his fraud-based claim within the limitations period, and (3) his own due diligence in pursuing discovery of the claim. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d at 60. He has not carried this burden.

As already discussed, the complaint here expressly pleads storm warnings that would motivate "a reasonably diligent plaintiff" to investigate. It is devoid, however, of

7

any allegation that Rosenshein engaged in even a basic inquiry. *See Stone v. Williams*, 970 F.2d 1043, 1048–49 (2d Cir. 1992) (observing that "[f]raudulent concealment does not lessen a plaintiff's duty of diligence; it merely measures what a reasonably diligent plaintiff would or could have known regarding the claim"). Rosenshein's duty to investigate is unaltered by defendants' alleged representations and assurances about the investments because the information already in Rosenshein's possession during the relevant period—including numerous defaults, foreclosures, and delays in selling the underlying collateral properties—clearly contradicted such statements to a degree that made it unreasonable for Rosenshein to rely thereon. Indeed, unlike in *State Farm Mutual Automobile Insurance Co. v. CPT Medical Services, P.C.*, No. 04CV5045(ILG), 2008 WL 4146190, at *9 n.9 (E.D.N.Y. Sept. 5, 2008), on which Rosenshein relies, the complaint makes plain his awareness of circumstances sufficient to impute inquiry notice of the fraud well within the limitations period.

Accordingly, because a reasonably diligent investor would have discovered fraud-based claims within the limitations period despite defendants' alleged concealment, Rosenshein is not entitled to equitable tolling.

3. <u>Conclusion</u>

We have considered Rosenshein's remaining arguments and conclude that they are without merit. Accordingly, the district court's August 29, 2016 judgment is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

8