17-2666-cv
Smulley v. Fed. Housing Fin. Agency

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of October, two thousand eighteen.

Present:
> RICHARD C. WESLEY,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges,*
> GEOFFREY W. CRAWFORD,
> *District Judge.**

---

DOROTHY A. SMULLEY,

> *Plaintiff-Appellant,*

> v.                                                                 17-2666

FEDERAL HOUSING FINANCE AGENCY,
FEDERAL NATIONAL MORTGAGE ASSOCIATION,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., WEBSTER FINANCIAL CORPORATION, a
Delaware Corporation doing business as WEBSTER
BANK, JPMORGAN CHASE BANK NATIONAL
ASSOCIATION,

> *Defendants-Appellees.†*

---

For Plaintiff-Appellant:                         DOROTHY A. SMULLEY, *pro se*
                                                 Stratford, CT

---

\* Chief Judge Geoffrey W. Crawford, of the United States District Court for the District of Vermont, sitting by designation.
† The Clerk of Court is respectfully instructed to amend the caption as set forth above.

For Defendants-Appellees:        MICHAEL A.F. JOHNSON, Arnold & Porter Kaye
                                 Scholer LLP, Washington, DC (*for* Federal Housing
                                 Finance Agency);

                                 LAURA ALEXANDRA ZAINO, (Brian D. Rich, *on the
                                 brief*) Halloran & Sage LLP, Hartford, CT (*for*
                                 JPMorgan Chase Bank National Association,
                                 Mortgage Electronic Registration Systems, Inc., and
                                 Federal National Mortgage Association);

                                 FRANCIS A. TEODOSIO, Welch, Teodosio, Stanek &
                                 Blake, LLC, Sheldon, CT (*for* Webster Financial
                                 Corporation, a Delaware corporation doing business
                                 as Webster Bank).

Appeal from an order of the United States District Court for the District of Connecticut (Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Appellant Dorothy Smulley, *pro se*, sued Webster Financial Corporation ("Webster"), JPMorgan Chase Bank National Association ("JPMCB"), Federal Housing Finance Agency ("FHFA"), Federal National Mortgage Association ("Fannie Mae"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants") for violations of the Racketeer Influenced and Corrupt Organizations Act, the Due Process Clause of the Fifth Amendment, and state law. Smulley alleged that Defendants violated the civil RICO laws and various state laws by falsely claiming that she did not pay her common charge assessments, illegally assessing fines and other charges against her without notice, and seeking to foreclose on her property. The district court dismissed the federal causes of action for failure to state a claim and declined to exercise supplemental jurisdiction over the state claims. Smulley appeals. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

2

**Background**

Since 1984, Smulley has owned real property in Connecticut as a member of the Oronoque Shores Condominium Association No. 1 Inc. In 2004, she refinanced the property; Webster was the mortgagee, MERS was Webster's nominee, and JPMCB was Smulley's mortgage servicer. Sometime in 2004, Webster transferred its "beneficial interest in [the] mortgage note" to Fannie Mae. Supp. App. 73. FHFA, as Fannie Mae's conservator, has authority to defend lawsuits against Fannie Mae.

As a condition precedent to the refinancing, Webster required Smulley to sign Form 3140, an industry-standard "Multistate Condominium Rider" ("Form 3140"). Supp. App. 32. Paragraph F of Form 3140, critical to the allegations here, provides:

> **Remedies**. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Supp. App. 78.

Following several protracted disputes regarding her payment of common charges and other assessments, Smulley commenced litigation in state court against her condominium association and its law firm. During the course of the litigation, in August 2013, one of the association's attorneys informed JPMCB—according to Smulley, "for the sole purpose of activating a payout under Paragraph F of Fannie Mae Form 3140," Supp. App. 80— that Smulley was delinquent in her common charge payments. In August 2014 and March 2016, Chase charged $500 and $2420.04, respectively, to Smulley's mortgage account, without Smulley's knowledge. Meanwhile, Smulley commenced litigation in federal court against Webster and several other defendants. After settling that lawsuit with all defendants but Webster, Smulley sought, and the

3

district court granted, leave to add JPMCB, Fannie Mae, FHFA, and MERS as additional defendants.

In her amended complaint against Defendants, Smulley contends that she was current in all payments to her condominium association, and that fines and assessments were levied against her "for the sole purpose of activating a payout under Paragraph F" of Form 3140. Supp. App. 80. She claims that "[t]he defendants' individual and collective actions [sought] to deprive plaintiff of her equitable interest in her real property and, at the same time, capture and redirect plaintiff's equity towards themselves" in furtherance of their "scheme of conspiracy, extortion and fraud." Supp. App. 81-82. While seemingly lawful, she claims, this practice in fact deprived her of due process, interfered with timely payment of her common charges, and affected the value of her property and her credit standing. Based on these allegations, Smulley asserted civil RICO claims against all five defendants, contending that they and others constituted an enterprise that used the mails and wires to make false representations to obtain money. She further asserted that the defendants and others filed fraudulent documents in state court concerning foreclosure of the property, and that Paragraph F deprived her of due process because it allowed the condominium association and mortgagee to act without notice to the borrower. She also alleged numerous violations of state law.

The defendants moved to dismiss under Rule 12(b)(6). The district court dismissed Smulley's civil RICO and due process claims, and declined to exercise supplemental jurisdiction over her state law claims.

## Discussion

This Court reviews *de novo* the dismissal of a complaint pursuant to Rule 12(b)(6). *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012). To survive a Rule 12(b)(6) motion, the complaint must "state a claim to relief that is plausible on its

4

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must assume as true all factual allegations asserted in the complaint. *Id.* Courts should interpret *pro se* complaints liberally to raise the strongest claims they suggest. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

### 1. Civil RICO Claims

The district court correctly dismissed Smulley's civil RICO claims. "To establish a RICO claim, a plaintiff must show: (1) a violation of . . . 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (internal quotation marks omitted). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). Accordingly, a civil RICO plaintiff must show "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invest[ed] in, or maintain[ed] an[] interest in, or participate[d] in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Group, LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (internal quotation marks omitted).

Smulley alleges predicate acts of mail fraud and wire fraud to constitute the defendants' pattern of racketeering activity. *See* 18 U.S.C. § 1961(1). The mail and wire fraud statutes proscribe "using the mails or a wire communication to execute 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *United States v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016) (quoting 18 U.S.C.

5

§§ 1341, 1343). These crimes thus require "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *Id.* (internal quotation marks omitted). A scheme to defraud is defined as "a plan to deprive a person of something of value by trick, deceit, chicane or overreaching." *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000) (internal quotation marks omitted).

Under the Federal Rules of Civil Procedure, "[t]he elements of mail and wire fraud must be pled with particularity." *Affinion Group,* 889 F.3d at 124 (citing Fed. R. Civ. P. 9(b)). The complaint must therefore "detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* The complaint must also "plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (internal quotation marks omitted; alteration in original).

Many of Smulley's RICO claims rest upon the purported illegality of Form 3140, a standard multistate condominium rider that, among other things, protects lenders' interests by allowing them to make (and then seek to recover) payments to third parties that borrowers were required but failed to pay. Smulley characterized Form 3140 as violating her due process rights because she did not receive notice of the debt, but beyond this characterization, she does not plead facts showing that Form 3140 is illegal. Enforcing the terms of a standard condominium rider that Smulley herself signed does not raise the inference of illegality required to support a RICO claim.

Smulley also argues that Defendants' practices in enforcing the form constituted a pattern of racketeering activity. But most of her examples of alleged mail and wire fraud involve entities other than Defendants, or allege that Defendants acted upon information provided by others.

6

Smulley failed to allege that Defendants had reason to know that the information given to them was false. Consequently, her allegations do not "give rise to a strong inference that . . . defendant[s] had an intent to defraud[.]" *Cohen*, 711 F.3d at 359. Moreover, to the extent Smulley alleges that any Defendants made false representations and filed false documents in Smulley's state court action(s), those acts do not constitute RICO predicates. *See Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (concluding that allegations of frivolous, fraudulent, or baseless litigation activities, such as proffering false affidavits and testimony to a state court, cannot constitute a RICO predicate act).

Furthermore, the district court also correctly concluded that Smulley did not allege mail and wire fraud with the requisite particularity under Rule 9(b). The relevant allegations of the amended complaint do not "detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Affinion Group*, 889 F.3d at 124. In fact, Smulley does not allege that Defendants made specific misrepresentations at all. Rather, she points to their *actions*: closing a bank account, refusing payments, withholding information, making charges against an account and demanding payment, and contacting credit agencies about a payment default. While it might be plausible that Defendants made certain misrepresentations in furtherance of these actions, the alleged misrepresentations are not set forth in the amended complaint and therefore Smulley has not stated a plausible RICO claim. As a result, the amended complaint fails to "nudge" the misconduct alleged in the pleading "across the line from conceivable to plausible." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (internal quotation marks omitted).

Smulley's complaint also included a RICO conspiracy claim. To state such a claim, "a plaintiff must allege the existence of an agreement to violate RICO's substantive provisions."

7

*Affion Group*, 889 F.3d at 124 (internal quotation marks omitted). As the district court properly held, without a sufficiently pleaded substantive RICO violation under 18 U.S.C. § 1962(c), Smulley's conspiracy claim under 18 U.S.C. § 1962(d) fails as well. *Affinion Group*, 889 F.3d at 126.

### 2. *Due Process Claim*

The district court dismissed Smulley's Fifth Amendment due process claim against Fannie Mae and FHFA after finding that they are not federal government actors for purposes of constitutional claims. Although it relied on case law at the time that uniformly so held, *see, e.g., Herron v. Fannie Mae*, 857 F. Supp. 2d 87 (D.D.C. 2012), *aff'd*, 861 F.3d 160 (D.C. Cir. 2017), a subsequent district court case has held differently. *See Sisti v. FHFA*, __ F. Supp. 3d __, 2018 WL 3655578 (D.R.I. Aug. 2, 2018). We need not reach this issue, however, because even if we were to assume that Fannie Mae and FHFA were federal actors, Smulley has not plausibly alleged a due process claim against them. This Court may affirm "on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993).

A constitutional claim for deprivation of property without due process of law requires that "a plaintiff must first identify a property right, second show that the state has deprived him of *that* right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (internal quotation marks omitted). Smulley points to the provisions of Form 3140 as failing to provide notice and an opportunity to be heard before charges were assessed against her. The paragraph of the form at issue, however, provides that the borrower will receive notice when the lender seeks payment of the charges, and it also permits negotiation of the terms of payment. Smulley signed this form, agreeing to its terms. And although she may not have received notice

8

as quickly as she would have liked, Smulley did receive notice; her own amended complaint refers to defendant JPMCB providing her with notice of the charges.   Accordingly, she fails to state a plausible due process claim.

### 3. *State Law Claims*

This Court reviews a district court's decision whether to exercise supplemental jurisdiction for abuse of discretion.   *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). The district court correctly concluded that diversity jurisdiction over Smulley's remaining state law claims was lacking.   It then declined to exercise supplemental jurisdiction over these claims. We find no abuse of discretion.   It is well settled that district courts can, and indeed should, decline to exercise supplemental jurisdiction when "the federal claims are eliminated in the early stages of the litigation."   *Klein & Co. Futures, Inc. v. Bd. of Trade of the City of New York*, 464 F.3d 255, 262 (2d Cir. 2006).

*        *        *

We have considered all of Smulley's remaining arguments and find them to be without merit.   For the foregoing reasons, the order of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9